791 F.2d 1412
 27 Wage & Hour Cas. (BN 1593, 104 Lab.Cas. P 34,809,
14 Collier Bankr.Cas.2d 1395, 14 Bankr.Ct.Dec. 964,
Bankr. L. Rep. P 71,196
 In re HARRIS MANAGEMENT COMPANY, INC. Debtor.
Bruce LINDSEY, as Trustee of Harris Management Company,
Inc., Plaintiff- Appellee,
v.
DEPARTMENT OF LABOR, an Agency of the United States of
America, Defendant- Appellant,
v.
ITPE-NMU WELFARE PLAN and ITPE-NMU Pension Fund,
Intervenors-Appellants.
 Nos. 85-2124, 85-2224.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 14, 1986.
Decided June 18, 1986.
 
 Bruce Lindsey, Salinas, Cal., for plaintiff-appellee.
 Carol A. De Deo, Washington, D.C., for defendant-appellant.
 Stephen W. Dyer, Alexander C. Crosby, Horan, Lloyd & Karachale, Monterey, Cal., for intervenors-appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before KENNEDY, FARRIS, and JOHN T. NOONAN, Jr., Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 In this appeal from the district court's affirmance of the bankruptcy court, we must determine whether the bankruptcy court erred in ordering the government to return certain funds transferred to it by the debtor. The transfer was pursuant to a stipulation the bankruptcy court had approved earlier.
 
 
 2
 The debtor, Harris Management Company, Inc., contracted with the government in December 1980 to provide mess attendant services at two Army bases, Fort Ord and Fort Hunter Liggett. The contract ("the Fort Ord contract") was subject to the Service Contract Act, 41 U.S.C. Secs. 351-358, which requires contractors furnishing services to the United States to pay certain minimum wages and benefits to employees. In May 1981, Harris made a collective bargaining agreement with the Industrial, Technical and Professional Employees Division of the National Maritime Union of America, AFL-CIO. From May 1981 to December 1981, Harris directed the required benefit payments to the ITPE-NMU Welfare Plan and the ITPE-NMU Pension Fund (collectively "the Union Fund"). In December 1981, Harris stopped paying the health and pension benefits. On September 22, 1982, Harris filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. When the petition was filed Harris was in arrears in benefit payments due under the Ford Ord contract. The arrearage was approximately $108,000. Harris continued to perform work under the contract.
 
 
 3
 On November 26, 1982, the government filed a complaint in bankruptcy court, entitled "Complaint seeking declaratory relief that automatic stay does not apply, or, alternatively, relief from the automatic stay." In the complaint, the government asserted its withholding rights under the Service Contract Act, 41 U.S.C. Sec. 352(a), and expressed its intention to withhold approximately $108,000 from the payment due Harris on November 30, 1982. After the complaint was filed, Harris and the government negotiated a deferred withholding schedule instead of the government's proposed lump-sum withholding. They agreed about $42,000 would be transferred to the government from amounts due Harris under an unrelated contract with the United States Navy, and a total of about $78,000 would be withheld by the government from the next four payments due Harris under the Fort Ord contract. The bankruptcy court approved the agreement in a "Stipulation and Order" dated December 21, 1982. On March 25, 1983, the bankruptcy court granted the government's motion to dismiss its complaint, the contract having expired by its terms and payments having been withheld as provided in the approved agreement.
 
 
 4
 On August 19, 1983, plaintiff-appellee Bruce Lindsey was appointed trustee in bankruptcy of the Harris estate. Lindsey brought the instant action to recover for the bankruptcy estate the $120,000 that had been transferred to the government. The Union Fund intervened on the side of the government, claiming it was entitled to the funds on behalf of Harris' employees. The bankruptcy court ruled for the trustee and ordered the funds turned over to the estate. The district court affirmed the order of the bankruptcy court, and the government and the Union Fund appealed. We reverse.
 
 
 5
 The primary issue is whether the bankruptcy court's approval of the stipulation effected an assumption of the Fort Ord contract under 11 U.S.C. Sec. 365. The government and the Union Fund characterize the bankruptcy court's approval of the stipulation as an order permitting the assumption of the Fort Ord contract, revised to allow withholding to cure the default in benefit payments. The trustee contends the order was not an approval of a contract assumption as contemplated by section 365. A subsidiary issue is whether the bankruptcy court had the authority to rescind its earlier approval of the stipulation. In its order for the return of funds, the bankruptcy court ruled that approval of the stipulation did not authorize assumption of the revised contract because there was no explicit mention of assumption and because there was some uncertainty about the notice to Harris' creditors. We find neither rationale supports the ruling.
 
 
 6
 We agree that assumption under section 365 requires the express approval of the court, In re Whitcomb & Keller Mortgage Co., 715 F.2d 375, 380 (7th Cir.1983); In re Kelly Lyn Franchise Co., 26 Bankr. 441, 445 (Bankr.M.D.Tenn.1983); 2 Collier on Bankruptcy p 365.03, at 365-25 (L. King 15th ed. 1985), but conclude the requirement was satisfied. It is not seriously disputed, and there is no finding to the contrary, that the whole purpose of the stipulation was to effect an assumption of the Fort Ord contract, as revised to permit the government's withholding. Cf. In re Whitcomb & Keller Mortgage Co., 715 F.2d at 380 (holding there was no assumption where "[n]either the bankruptcy court nor [the debtor] exhibited any intention of assuming the contract"). Harris indicated its intent to assume the contract on October 19, 1982 when it submitted to the bankruptcy court a "Report Of Executory Contracts To Be Confirmed." The report contained a list of contracts that Harris intended to perform. The Fort Ord contract was on the list. The government's complaint of November 26, 1982, seeking approval of its proposed withholding, stated expressly that an assumption was intended. Citing section 365, the complaint explained that withholding was the cure for Harris' default, a prerequisite to assumption of the contract under the statute. 11 U.S.C. Sec. 365(b)(1).
 
 
 7
 Coupled with the government's complaint, the stipulation the bankruptcy court signed and approved recited that Harris would continue to provide services under the contract and that the government would withhold various sums from the next four payments to cure Harris' default. As the trustee all but conceded at oral argument before us, the bankruptcy court's approval of the stipulation is plausible only as an approval of Harris' assumption of the Fort Ord contract. That the stipulation was not formally labeled "assumption of contract" does not detract from the substance of the underlying agreement. In light of the clear, essentially undisputed, intent of the parties and the recitations in the government's complaint and Harris' report of executory contracts to be confirmed, the bankruptcy court approved an assumption of the contract.
 
 
 8
 The trustee argues that even if the bankruptcy court sought to approve an assumption, its order was defective because Harris' creditors did not receive adequate notice. We disagree. When Harris' attorneys submitted the proposed stipulation to the bankruptcy court on December 20, 1982, they believed that the court would not act on their motion until creditors were notified. The record reveals that the attorneys noticed the motion, intending to give the creditors an opportunity to object. The court, however, signed the stipulation on December 21, 1982, the day after it was submitted. On January 3, 1983, when the court advised Harris' attorneys of its order, the attorneys brought the matter to the attention of the creditors' committee and suggested that the committee notify the court of any objection. The committee did not object, and it is not seriously contended that the committee failed in its fiduciary obligation to the creditors.
 
 
 9
 The trustee concedes that when these matters occurred, no more notice was required. Even under the Bankruptcy Rules now in force, notice of an intended assumption need be given only "to the other party to the contract and to other parties in interest as the court may direct." Bankruptcy Rule 6006(c) (effective August 1, 1983). The Advisory Committee Note to Rule 6006(c) states that "[t]he other party to the contract should be given appropriate notice of the hearing and the court may order that other parties in interest, such as a creditors' committee, also be given notice." Id. (Advisory Committee Note) (emphasis added). Thus, even assuming Rule 6006 were applicable, it was substantially satisfied when Harris' attorneys notified the creditors' committee. We conclude the creditors had adequate notice of the stipulation.
 
 
 10
 Finally, though we acknowledge the bankruptcy court has a general authority to set aside its own orders pursuant to equitable principles, see, e.g., In re Cada Investments, Inc., 664 F.2d 1158, 1161 (9th Cir.1981); In re Todem Homes, Inc., 51 Bankr. 883, 887 (Bankr. S.D.N.Y.1985); In re Lebanon Steel Foundry, 48 Bankr. 520, 524 (Bankr.M.D.Pa.1985), we find the equities do not justify such action here. The government, relying on the cure provided in the stipulation, did not pursue other available remedies for Harris' default, such as debarring Harris from government contracts, 41 U.S.C. Sec. 354. Further, Harris' employees continued to work under the contract which remained in force by reason of the court's first order. Without their labor, which assured the estate a substantial income stream, the bankruptcy estate would have been depleted. Under the circumstances, the equities weigh against depriving the employees of the benefit payments owed by Harris. Equitable considerations do not support the bankruptcy court's order that the funds be returned to the estate.
 
 
 11
 The bankruptcy court properly approved assumption of the Fort Ord contract and erred in revoking its approval by directing the government to return the funds to the estate. The judgment of the district court, affirming the order of the bankruptcy court, is REVERSED.