In re LCO ENTERPRISES, Debtor.

Edward M. WALSH, Trustee, Plaintiff,

v.

Lincoln ALVARADO, A California Limited Partnership, Patrician Associates, Inc., A California Corporation, and LPC Alvarado Phase II, Defendants.

Bankruptcy No. 4–89–02673 J2.
Adv. No. 4–89–0476 AN.

United States Bankruptcy Court,
N.D. California.

July 12, 1990.

Barry Milgrom, San Francisco, Cal., for defendants.

Kathy L. Hensley, San Francisco, Cal., for plaintiff.

## OPINION

RANDALL J. NEWSOME, Bankruptcy Judge.

### I. *Introduction*

Before the Court are cross-motions for summary judgment filed by defendants Lincoln Alvarado, Patrician Associates, Inc., and LPC Alvarado Phase II, and by chapter 11 trustee and plaintiff Edward M. Walsh. In this preference action, Walsh seeks to avoid and recover several prepetition rent payments made by debtor LCO Enterprises ("LCO").

Defendants base their motion solely on § 547(b)(5) of the bankruptcy code, contending that Walsh cannot, as a matter of law, establish this essential element of his burden of proof. In response, Walsh asserts in his cross-motion that the uncontroverted facts establish all of the elements of his preference claim, including § 547(b)(5).[1]

---

**1.** Section 547(b)(5), commonly known as the "greater amount" test, states that a trustee—assuming all other elements of § 547(b) are satisfied—may avoid a transfer "that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under chapter 7 of this title;

He also moves to strike defendants' "ordinary course of business" defense under § 547(c)(2) of the code.

After reviewing the motions, the Court holds that there remain genuine issues of material fact which preclude partial or complete summary judgment on Walsh's preference claim. The Court further holds that defendants cannot assert the ordinary course of business defense as a matter of law.

## II. *Statement of Facts*

The parties are in basic agreement as to the following facts. LCO was a wholesaler and distributor of goods. Prior to filing its Chapter 11 petition, LCO entered into three separate leases of warehouse space with defendants. The first lease, the "Long Term Lease", commenced on or about December 1, 1988, at a 5–year term with rent of approximately $25,000 due at the first of each month. The second lease, the "Building E lease", commenced on or about January 1, 1989, at a month-to-month term with rent of approximately $22,000 due at the first of each month. The third and final lease, the "Building N lease", commenced on or about March 9, 1989, at a month-to-month term with rent of approximately $15,000 due at the first of each month.[2]

Within months after entering into these leases, LCO fell behind in the rent and was forced to negotiate with defendants to restructure the lease payments and modify the total square footage. These negotiations culminated in an agreement which LCO subsequently incorporated into a plan of reorganization in its chapter 11 case filed on June 13, 1989.

During the ninety days immediately preceding the chapter 11 filing, and in the midst of the parties' negotiations, LCO made the following rent payments to defendants:

| | |
|---|---|
| April 7, 1989 | $12,733.58 |
| April 7, 1989 | 6,507.00 |
| April 7, 1989 | 8,445.25 |
| May 31, 1989 | 15,870.00 |
| June 8, 1989 | 25,467.15 |
| June 8, 1989 | 22,984.48 |

These payments total $92,007.46, but approximately $177,000[3] was owing on these leases for the months of April, May, and June.

In its disclosure statement and plan, which were filed the day after the chapter 11 petition, LCO essentially proposed the assumption of all 3 leases under the following terms: a reduction in square footage at the Building E lease; a partial cure of rent arrearages on all 3 leases over four years; an overall reduction in rent; and LCO's execution of a new long term lease. The plan did not contemplate the appointment of a trustee. However, both the original and amended order of confirmation provided for the appointment of Walsh, as trustee, with the power to investigate and pursue preferences.[4] While the plan contained defendants' express waiver of payment as to rent arrearages not cured over the four-year period[5], the amended order of confirmation did not contain a general release in favor of defendants.

On November 30, 1989 Walsh commenced this preference action to recover the entire $92,007.96. The parties agree that the transfers in question were made within 90 days of the petition and that the plan generated a dividend of 2.4 percent to unsecured creditors. In addition, defen-

---

(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

2. Walsh takes some issue with defendants' statement of monthly rent owing on the leases and maintains that actual rent varied from the amounts set forth in the leases. However, for purposes of these motions, he accepts the above amounts.

3. Walsh asserts that on May 31, 1989 LCO made a payment of $21,697.75 to defendants for the month of June on the Building N lease. He

does not assert a preference claim for this payment and it is excluded from the above calculation.

4. The Court has not been referred to any portion of the transcript of the confirmation hearing.

5. Under its plan, LCO proposed a repayment of "approximately $75,000 over 4 years", in full satisfaction of defendants' pre-petition claim estimated in the plan at $175,496.

dants are willing to assume, for purposes of this motion only, that the payments were made on account of an antecedent debt and that LCO was insolvent at the time of the transfers.

Based upon the parties' submissions, the Court cannot glean any limitation upon Walsh's avoidance power. The parties have not referred the Court to any portion of the record of the confirmation proceedings, nor to any other conclusive evidence on this point. The Court's only observation is that the plan and disclosure statement make no mention whatsoever of the alleged preference payments, and the amended order of confirmation itself places no limits on Walsh's avoidance power. Finally, the Court also notes that the parties have made no representations as to the value of the leases to the estate on the petition date.

## III. *Discussion*

### 1. *The Greater Amount Test under § 547(b)(5).*

Defendants assert that Walsh cannot meet the "greater amount" test of § 547(b)(5) because LCO, by virtue of the confirmed plan, ultimately assumed the leases on which these transfers were made. They argue that the transfers did not enable them to receive an amount on their prepetition claims greater than that which they would have received under § 365 of the bankruptcy code, since under this provision LCO would be required to pay these prepetition claims in full prior to assuming these leases. 11 U.S.C. § 365(b)(1)(A). Moreover, defendants posit that the Court, by confirming a plan which provided for LCO's partial cure of the prepetition defaults, in effect sanctioned defendants' retention of all prior rental payments by LCO.

▪ The issue presented appears to be one of first impression in the reported decisions: does a landlord receive more than he would have received in a case under chapter 7 pursuant to § 547(b)(5), where the debtor cures a lease prepetition and as-

sumes the leases in its chapter 11 plan of reorganization but the plan by its terms provides the landlord with no protection from preference attack?

In addressing this difficult issue the Court first observes that, on their face, § 365 and § 547 are mutually exclusive provisions. Neither provision expressly refers to or incorporates the other. Defendants assert that § 365 is nevertheless incorporated by § 547(b)(5)(C), which measures the transferee's return in a hypothetical liquidation by "the payment of such debt to the extent provided by the provisions of this title". According to defendants, this incorporation means that LCO's prepetition rental payments should remain undisturbed, since under § 365(b)(1)(A) they would be entitled to all prepetition rent and these rights should be considered a component of their calculated return under § 547(b)(5)(C). However, the legislative history is devoid of any indication that § 365, by itself, was intended to operate as a safe harbor for preferential payments made by the debtor prior to the bankruptcy. Absent any expression from Congress that a safe harbor was intended, such an exception cannot be inserted into the statutory language.

Defendants' interpretation of § 547(b)(5)(C) also ignores the disparate purposes of § 365 and § 547. Section 365 addresses the *postpetition* relationship between parties to an executory contract. It provides a special set of rules pertaining to the rights of landlords and tenants in the bankruptcy context. Section 547 looks to pre-filing events and provides a means for attaining parity among similarly-situated creditors who may not have received equal treatment from the debtor prepetition. The defendants would have the Court distort these two very different statutory goals by holding that because § 365 places landlords in a preferred position over other creditors upon the debtor's postpetition cure of prepetition arrearages and assumption of a lease, then as a matter of law § 547 should never apply to the *prepeti-*

*tion* payment of arrearages pursuant to a lease which was renegotiated prepetition but made a part of the debtor's Chapter 11 plan of reorganization. Because neither statute supports such a conclusion, the defendants' argument must fail.[6]

 While defendants cannot prevail in this argument as a matter of law, this in no way reflects upon the merits of their argument under § 547(b)(5) as a matter of fact. Indeed, the facts established at trial may show that debtor's prepetition payments to defendants ultimately may have benefitted the unsecured creditors by preserving the value of these leases for the estate. The importance of this point is highlighted in *Lewis v. Shurtleff, Inc.*, 778 F.2d 1416 (9th Cir.1985). There, the Court determined that a debtor's prepetition transfer of property amounted to full performance of an unsecured contractual obligation, as opposed to a payment in reduction of a liquidated debt. In reaching this conclusion the Court was required to focus on the estate's exposure to liability for breach of contract. *Id.* at 1422. In such circumstances the greater amount test boils down to a comparison between the value of the property transferred and the amount of contract damages which would arise if the transfer were avoided, since only if the transfer were avoided would the creditor then have a claim against the estate. *Id.* at 1422.

In the case of a payment in reduction of a liquidated debt, the test is more straight forward. If the payment were not avoided, the creditor would retain the amount of the transfer and also share in any dividend from the estate's liquidation to the extent any debt remains. *Id.* at 1421. Under § 547(b)(5), the transfer is presumed avoided and the transferee's return is measured by the liquidation dividend on the entire claim including the amount of the transfer. Thus, so long as the estate's distribution to similarly situated creditors is less than 100 percent, the transferee will be found to have received a greater amount by retaining the transfer, and it will be deemed to have met the standard of § 547(b)(5). *Id.*[7]

In the present case, the underlying obligation is a lease on which the estate remains liable for monthly rent. The landlord's claim is unsecured but, as of the petition date, the landlord also has rights under § 365 to compel either prompt cure of all prepetition defaults or rejection of the lease.

The confirmed plan estimated a dividend of only 2.4% on unsecured claims, and defendants do not seriously dispute the fact that they would receive considerably less on their total unsecured claims in a hypothetical chapter 7 than what they received from the transfers. However, the parties have not presented the Court with any means to assess the value of the leases to the estate as of the petition date. Given the defendants' rights under § 365, the value of these leases would, in large part, determine whether a chapter 7 trustee would assume any or all of the three leases and the terms under which any or all of them would be assumed.[8] Distilled to its basics, the § 547(b)(5) issue is simply whether a trustee in a hypothetical chapter 7 case would have assumed these leases on the petition date.

Clearly, LCO believed these leases were of great value to the ongoing reorganiza-

---

6. While defendants correctly note that *Seidle v. GATX Leasing Corp.*, 778 F.2d 659 (11th Cir. 1985) has similarities to this case, it is distinguished most notably by the specific "understanding" which the Court found existed between the secured creditor and debtor regarding the immunity of arrearage payments from preference attack. No such understanding exists in this case.

7. This point is also illustrated in *In re World Financial Services Ctr., Inc.,* 78 B.R. 239 (9th Cir.B.A.P.1987), in which the bankruptcy appellate panel held that prepetition payments to a fully secured creditor are not preferential since the secured claim would be satisfied in full upon the estate's liquidation of the collateral.

8. In a chapter 7 case, the trustee is empowered under § 704 and § 721 of the bankruptcy code to assume and assign leases or assume a lease for a brief period of time to accomplish an orderly liquidation.

tion effort. That alone, however, is not sufficient for purposes of applying § 547(b)(5). The liquidation analysis set forth in LCO's disclosure statement is also not very helpful. To determine the value of these leases to the estate and the terms under which a hypothetical trustee would cure the prepetition arrearages, the Court will need evidence on the extent to which the estate would profit by the trustee's sale of the long term lease and benefit from a gradual liquidation of LCO's inventory at the other two locations. Only then can the Court evaluate the impact of defendants' exercise of their rights under § 365.

Without such evidence, the Court cannot apply the greater amount test to these transfers. For these reasons, both motions for summary judgment on Walsh's preference claim under § 547(b) must be denied.

### 2. *The Ordinary Course of Business Defense.*

■ § 547(c)(2) exempts preferential transfers from avoidance if they were made in the ordinary course of business of the debtor and transferee. There are three criteria for this affirmative defense. The transfer must be:

(1) A payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(2) Made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(3) Made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

■ In order to prevail under the third criteron, the creditor must show that the challenged transfer was made according to practices common to businesses similarly situated to the debtor and transferee. *In re Loretto Winery, Ltd.*, 107 B.R. 707, 709 (9th Cir. BAP 1989). Payments which arise out of "unusual" debt collection or payment practices do not fall within the scope of § 547(c)(2). *In re Pioneer Technology, Inc.*, 107 B.R. 698 (9th Cir. BAP 1988).

In his cross-motion, Walsh makes two arguments to demonstrate that the defense is not available to these defendants. First, he asserts that these payments were made as part of a prepetition settlement of a dispute between the parties, which, by definition, would fall outside the ordinary course of business. Second, he points out that the payments were late, sporadic and not according to the usual terms of leases themselves.

■ Defendants have not responded to this portion of Walsh's cross-motion. The record, although not conclusive, does indicate that the transfers were not made according to the terms of the leases. More importantly, defendants have conceded that the transfers were made in the midst of the lease negotiations which ultimately concluded in a prepetition settlement of their lease dispute with LCO. Given this admission, the Court is persuaded that the transfers were not made in the ordinary course of business, and thus the defendant cannot prevail under § 547(c)(2). *Matter of Red Way Cartage Co., Inc.*, 84 B.R. 459, 462 (Bankr.E.D.Mich.1988); *In re Daikin Miami Overseas, Inc.*, 65 B.R. 396, 398 (S.D. Fla.1986).

### IV. Conclusion

Based on the foregoing, defendants' motion for summary judgment is denied, Walsh's cross-motion is denied in part and granted in part, and defendants' third affirmative defense is hereby stricken.