## In re LCO ENTERPRISES, Debtor.

**Lincoln ALVARADO, a California limited partnership, Patrician Associates, Inc., a California corporation, and LPC Alvarado Phase II, Appellants,**

v.

**Edward M. WALSH, Trustee, Appellee.**

BAP No. NC–90–1707 RPAs.

Bankruptcy No. 4–89–02673–J2.

Adv. No. 4–89–0476–AN.

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted on Sept. 19, 1991.

Decided March 30, 1992.

Barry Milgrom, San Francisco, Cal., for appellants.

Merle C. Meyers, San Francisco, Cal., for appellee.

Before RUSSELL, PERRIS, and ASHLAND, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge.

The debtor's landlord appeals from the bankruptcy court's order denying its motion for summary judgment and granting in part the Chapter 11 trustee's cross-motion for summary judgment. 116 B.R. 188 The bankruptcy court ruled that rent payments made within the 90 day period prepetition were avoidable preferences even though the leases were assumed and the parties to the leases had agreed to the concessions with the understanding that there would be no attempts to recover the payments. We reverse.

### I. FACTS

The debtor, LCO Enterprises (LCO), is a public warehouseman. LCO is the tenant in three long-term commercial warehouse leases with the appellants, Lincoln Alvarado, Patrician Associates, Inc. and LPC Alvarado Phase II (hereinafter collectively referred to as the "landlord").[1] A few months after entering into the leases, LCO advised the landlord of financial difficulties. The landlord agreed to certain rent forgiveness,[2] an increase in the size of the

---

**1.** The leases were 1) a five year lease for approximately 77,000 square feet of warehouse space at $25,467.15 per month, 2) a month-to-month lease of approximately 76,800 square feet at $22,984.48 per month and 3) a month-to-month lease of approximately 85,000 square feet at $15,870 per month.

**2.** The landlord granted forgiveness of one-half of April's rent and part of the May and June rent.

premises subject to the long-term lease and deferrals of a portion of rent under that lease. This agreement was incorporated into the Chapter 11 plan under which the leases were deemed cured and assumed.[3]

The landlord and LCO agreed that the concessions resulting in the modified leases were not subject to further changes or additional concessions. The landlord's treatment under the plan was based on these negotiations.

The disclosure statement, reorganization plan and ballots were distributed to creditors shortly before the debtor filed its petition on June 13, 1989. The plan was confirmed shortly thereafter. An amended order confirming the plan of reorganization and appointing the trustee was filed on September 13, 1989.

▇▇▇▇▇ the plan was confirmed, on November 30, 1989, the Chapter 11 trustee filed a complaint for recovery of rent payments made within the 90 days pre-petition as avoidable preferences. The landlord filed a motion for summary judgment asserting that rent payments for leases that were assumed cannot be avoided as preferences. The trustee filed a cross-motion for summary judgment. The court granted partial summary judgment for the trustee and denied the Landlord's motion for summary judgment. We granted the landlord leave to appeal.[4]

## II. ISSUE

Whether the trustee is precluded from recovering preferential transfers of pre-petition rent payments where (1) the parties had entered into a pre-petition agreement regarding lease payment concessions that was incorporated into the reorganization plan and (2) the leases were assumed pursuant to 11 U.S.C. § 365(b)(1).[5]

## III. STANDARD OF REVIEW

▇▇ A bankruptcy court's grant of summary judgment is reviewed *de novo*. *In re New England Fish Co.*, 749 F.2d 1277, 1280 (9th Cir.1984). Whether pre-petition rent payments for an assumed lease are avoidable preferences is a question of law reviewable *de novo*. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986).

## IV. DISCUSSION

▇▇ Section 547(b) lists five requirements that must be met for avoidance of preferential transfers:

(b) Except as provided in subsection (c) of this section, **the trustee may avoid any transfer of an interest of the debtor in property—**

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ... and

(5) **that enables such creditor to receive more than such creditor would receive if—**

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) **such creditor received payment of such debt to the extent provided by the provisions of this title.**

11 U.S.C.A. § 547(b) (West 1979) (emphasis added).

The trustee in this case is advocating the application of § 547(b) without regard to the fact that there was an avoidance immu-

---

**3.** Under the plan, $175,496 owed to the landlord was reduced to $75,000 and payment extended over four years.

**4.** An order denying a motion for summary judgment is interlocutory; therefore, the appellants

were required to file a motion for leave to appeal under Fed.R.Bankr.P. Rule 8003.

**5.** All references to Code sections are to Title 11 of the United States Code unless otherwise indicated.

nity agreement between LCO and the landlord [6] that was integrated into the court approved plan of reorganization or the fact that under § 365(b)(1) [7] the debtor would have to pay the very rents the trustee seeks to avoid in order to assume the leases.

Similar facts were presented to the Eleventh Circuit in the case of *Seidle v. GATX Leasing Corp.*, 778 F.2d 659 (11th Cir. 1985). *Seidle* involved the interplay between § 547 and § 1110. Section 1110 allows a creditor that finances aircraft purchases to repossess the aircraft within 60 days of the bankruptcy unless the debtor stipulates that it will perform its obligations under the purchase agreement and cure any defaults.[8] The parties entered into such a stipulation which was approved by the court.

The trustee subsequently filed a preference complaint attempting to recover $326,902.32 in payments the debtor made to the creditor within the 90 day period prior to filing. The creditor moved for summary judgment and the district court granted its motion. The trustee appealed and the Eleventh Circuit affirmed:

> In this case, [the trustee] attempts to circumvent the stipulation by arguing that section 547 allows a trustee to recover the payments [the debtor] made within 90 days preceding bankruptcy.... [The trustee] attempts to set aside, as preferences, these pre-petition payments which [the debtor] would have otherwise been required to make pursuant to the section 1110 stipulation. [The trustee] contends that section 1110 provides that the debtor must cure all defaults which occurred before the stipulation. [The trustee] insists that outstanding default payments are distinguishable from payments actually made within ninety days of the filing of the bankruptcy petition. [The trustee] argues that the "defaults" do not include any payments [the debtor] made to [the creditor]. Although [the trustee's] argument may appear technically correct, **application of this theory would render**

**6.** The declaration of Steven O. Gasser, counsel of record for the debtor and principal attorney responsible for resolving the treatment of the landlord, states:

> The negotiations between the debtor and the Landlord were integral to the Debtor's reorganization, and resulted, in essence, in the modification of the Long Term Lease, and the cure and assumption of the Building E Lease and Building N Lease. The results of the negotiations were incorporated into the Plan of Reorganization. The treatment of the Landlord under the Plan of Reorganization was predicated upon the payments which had previously been made with respect to the rent that had been paid under each of the leases for the Leased Premises. Had those payments not been made, or if it were contemplated that those payments might be avoided, the landlord's treatment under the Plan of Reorganization would have been structured differently.

AER Document 5.

The declaration of Michael St. James, counsel of record for the landlord and the attorney principally responsible for negotiating with the debtor states:

> Ultimately an agreement was reached and incorporated in the Debtor's Plan of Reorganization under which the Landlord made certain identified concessions and the leases were deemed cured and, as modified, assumed. I am informed and believe that the payments at issue in this case were made by

the Debtor on account of the Leases pursuant to the negotiated agreement.... the parties negotiated based on the assumption that their agreement was not to be the subject of further changes or additional concessions or recoveries, and all payments made pre-petition were credited for the purposes of arriving at the concessions which the landlord agreed to make.

AER Document 6.

These declarations were part of the record before the bankruptcy court. The bankruptcy court concluded in its Opinion that there was no understanding that the arrearage payments would be immune from preference attack. AER Document 14:8, fn 6.

**7.** Section 365(b)(1) provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>   (A) cures, or provides adequate assurance that the trustee will promptly cure such default; ...

11 U.S.C.A. § 365 (West 1991).

**8.** As noted by the *Seidle* court, § 1110 and § 365 are similar because they both require court approval of post-petition agreements to continue pre-petition obligations. *Id.* at 662.

**the section 1110 stipulation impractical and ineffective.**

*Id.* at 662 (emphasis added).

The *Seidle* court also ruled that the payments were not voidable preferences under § 547(b)(5) because the creditor would have received the payments when the court approved the stipulation. Since the creditor would have received the same amount, the payments did not improve the position that the creditor would have enjoyed under the distributive provisions of the Code.

We agree with the appellant that *Seidle* is similar to this appeal in two main aspects: the debtor's intent to provide the creditor with immunity from preference attack and the fact that the trustee would be obligated to pay the pre-petition rents due in order to assume the leases.

The evidence before us is that the landlord agreed to the rent concessions and allowed LCO to remain in possession of the warehouses and continue its business of renting warehouse space to customers in exchange for assurances that the pre-petition payments would be immune from preference attack.

Here, as in *Seidle*, the trustee is attempting to avoid payments that the debtor would be required to pay pursuant to its agreement with the creditor. The agreement was integrated into the plan, which deemed the leases cured and assumed, and approved by the court. The Chapter 11 trustee is bound by the agreement where it was the intent of the parties to provide such immunity, especially where the trustee enjoys the benefits of the agreement. *Seidle*, 778 F.2d at 665; *In re American Int'l. Airways, Inc.*, 74 B.R. 691, 695 (Bankr.E.D.Pa.1987).

The rent payments were not voidable preferences because, in this case, the position the Landlord would have otherwise enjoyed under the Code was not improved. The trustee's proposed exercise of avoidance powers would thwart the effect of § 365(b)(1) requiring the debtor to cure defaults before assuming the leases and would produce the anomalous result of creating an immediate default in the lease.

It makes absolutely no sense to force the Landlord to refund payments due it under the provisions of the Code.

## V. CONCLUSION

We REVERSE the order granting partial summary judgment in favor of the trustee and denying summary judgment for the Landlord. The position of the Landlord was not improved because it did not receive more than it was entitled to under the provisions of the Code. Nor is the trustee entitled to circumvent the agreement entered into between LCO and the landlord in which the leases were deemed cured and assumed in return for preference immunity.

PERRIS, Bankruptcy Judge, concurring:

Although I agree with the majority's conclusion that summary judgment should be granted in favor of the landlord, I write separately to address more fully the section 547(b)(5) issue.

The bankruptcy court indicated that the section 547(b)(5) determination must necessarily involve a determination of whether a hypothetical Chapter 7 trustee would assume the leases and cure the pre-petition arrears. I disagree. The hypothetical liquidation under section 547(b)(5) should not, as the bankruptcy court's reasoning suggests, be conducted in a vacuum. When, as in this case, post-petition events, such as the assumption of leases, have occurred, those events must be reflected in the hypothetical liquidation. *See Seidle v. GATX Leasing Corp.*, 778 F.2d 659, 665 (11th Cir.1985). To require courts to examine whether such events would or would not have occurred if the case had been commenced under Chapter 7 calls for a tenuous inquiry that is not required by the language of the statute.

Under section 547(b)(5), if the transfers at issue had not been made, the landlord would have the rights in a Chapter 7 case of a lessor under an assumed lease. Pursuant to section 365(b)(1)(A), such a lessor would either be paid his claim for past due rent prior to the assumption or would have the right to prompt payment of such rent.

Any unpaid rent is payable as a priority administrative expense. *See In re Coast Trading Co.,* 744 F.2d 686, 692 (9th Cir. 1984). Under the section 547(b)(5) analysis, therefore, in a Chapter 7 liquidation, the landlord would either be paid the amount of the payment at issue prior to the assumption or would have an administrative claim for that amount. Because the liquidation analysis in the disclosure statement indicates that all administrative claims will be paid in full, it follows that the landlord did not receive more, by virtue of the prepetition transfers, than it was entitled to under the Code. Because the trustee has not met the requirement of section 547(b)(5), I agree that the bankruptcy court's decision must be reversed.[9]

---

**9.** I reach this conclusion solely on the basis of section 547(b)(5). I do not join in the majority's implicit suggestion that any avoidance immunity agreement protected the transfers at issue because I find no evidence in the record that such an agreement was approved by the court following proper notice to interested parties. I disagree with the majority's suggestion that a preference immunity agreement was somehow incorporated into the approved plan because neither the plan nor the confirmation order provide for any such immunity.