**In re LCO ENTERPRISES, Debtor.**

**Lincoln ALVARADO; Patrician Associates, Inc.; LPC Alvarado Phase II, Appellees,**

v.

**Edward M. WALSH, Trustee, Appellant.**

No. 92–15825.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1993.

Decided Dec. 30, 1993.

Melanie M. Darling, Goldberg, Stinnett & MacDonald, San Francisco, CA, for appellant.

Barry Milgrom, Michael St. James, Rosenblum, Parish & Bacigalupi, San Francisco, CA, for appellees.

Before: TANG, TROTT and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

This appeal concerns the mechanics of applying the "greater amount" test of 11 U.S.C. § 547(b)(5) to determine whether a prepetition payment to a landlord constitutes a preference. The question before us is whether the bankruptcy court must hypothesize whether a hypothetical chapter 7 trustee would assume a lease, or whether the court must base its analysis on the fact that the lease was actually assumed in the chapter 11 proceedings. We conclude that the hypothetical chapter 7 analysis required by § 547(b)(5)[1] must be based on the actual facts of the case and affirm the decision of the Bankruptcy Appellate Panel.

## BACKGROUND FACTS

LCO Enterprises was formed in 1981 to provide merchandise warehousing and distribution services. LCO's business flourished. Over the next seven years it expanded from a 25,000 square foot warehouse to a 500,000 square foot custom-designed facility. When LCO lost its largest customer, it was forced to scale back operations. LCO vacated its warehouse and leased space from Lincoln Alvarado and Patrician Associates, Inc. (collectively "Lincoln") in late 1988 and early 1989. LCO executed a five-year lease with a monthly rent of approximately $25,000, and two month-to-month leases with monthly rents of approximately $22,000 and $15,000. Within only a few months, LCO fell behind in paying the rent. It made partial rent payments in April, May and June, which totaled $92,007.46, but about $175,496 was still owed for those three months.

1. All references to Code sections are to Title 11 of the United States Code unless otherwise indicated.

2. The bankruptcy court also granted the Trustee's cross-motion for partial summary judgment

Recognizing that the situation was worsening for both parties, LCO and Lincoln restructured their relationship. The parties agreed to a reduction in the amount of leased space, a reduction in rent, and the execution of a new long-term lease. With respect to the $175,496 arrearage, Lincoln agreed to accept payment of $75,000 over four years and to forgive the balance. The restructured lease arrangement was recorded in a chapter 11 disclosure statement and plan and distributed to LCO's creditors. The plan was to be funded by a $200,000 cash contribution from LCO's shareholders and a new investor. Thereafter, on June 13, 1989, LCO filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code. The plan was confirmed on July 21, 1989.

On September 13, 1989, Edward M. Walsh was appointed as chapter 11 trustee ("Trustee") with limited powers to act as disbursing agent, to object to claims, and to investigate and pursue any preferential payments or fraudulent transfers. The Trustee filed this adversary proceeding against Lincoln on November 30, 1989. He sought to set aside, pursuant to § 547(b), the $92,007.46 partial rent payments made prior to the filing of the petition.

Lincoln moved for summary judgment and argued that the Trustee could not prove that Lincoln improved its position, within the meaning of § 547(b)(5), as a matter of law. The bankruptcy court denied Lincoln's motion. It held that there was a material issue of fact as to whether a hypothetical chapter 7 trustee would have assumed the lease. *In re LCO Enters.*, 116 B.R. 188 (Bankr.N.D.Cal. 1990).[2] The Bankruptcy Appellate Panel granted leave for an interlocutory appeal and reversed. *In re LCO Enters.*, 137 B.R. 955 (9th Cir. BAP 1992).

## JURISDICTION AND STANDARD OF REVIEW

The BAP had jurisdiction pursuant to 28 U.S.C. § 158(b). Our jurisdiction is

on the ground that Lincoln could not assert the ordinary course of business defense under § 547(c)(2) as a matter of law. That issue was not appealed to the BAP and is not before us.

premised on 28 U.S.C. § 158(d). We are in as good a position as the BAP to review the decision of the bankruptcy court. Thus, we review de novo the bankruptcy court's denial of summary judgment. Viewing the evidence in the light most favorable to the Trustee, we must determine whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the relevant substantive law. *See In re United Energy Corp.,* 944 F.2d 589, 593 (9th Cir.1991).

### DISCUSSION

Section 547(b) of the Bankruptcy Code enables the Trustee to recover for the benefit of the estate certain payments made by a debtor to a creditor within the 90 days preceding the filing of the bankruptcy. A payment is avoidable as a preference only if the payment improved the creditor's position as compared to other creditors of the same class. 11 U.S.C. § 547(b)(5). Section 547(b)(5) provides that the trustee may avoid any transfer of an interest of the debtor in property:

> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

This section, sometimes referred to as the "greater amount" test, requires the court to construct a hypothetical chapter 7 case and determine what the creditor would have received if the case had proceeded under chapter 7. *See In re Ehring,* 900 F.2d 184, 188 (9th Cir.1990); *In re Lewis W. Shurtleff, Inc.,* 778 F.2d 1416, 1420–22 (9th Cir.1986); 4 *Collier on Bankruptcy* ¶ 547.08 (Lawrence P. King, ed., 15th ed. 1993).

The starting point in the "greater amount" analysis is identification of the class to which the creditor belongs. *See In re Lewis W. Shurtleff,* 778 F.2d at 1421. That classification is the crux of this appeal. In an ordinary case, the amount and priority of an unsecured creditor's claim is fixed on the date of the filing of the petition. Similarly, on the date of the filing, a secured creditor's claim is fixed in amount, the value of the security as of that date can be ascertained and the claim will be either fully or partially secured. The debtor's lessor, however, stands in a different position. Although the amount of the debtor's prepetition default under the lease may be fixed on the date of the filing, the status of the lessor's right to payment from the estate is not yet fixed. That is because the lessor's position relative to other creditors depends on whether the lease is assumed or rejected. If the lease is assumed, the lessor is entitled to prompt payment in full of any default under the lease, and the debtor is entitled to continued use of the property. 11 U.S.C. § 365(b). If the lease is rejected, the lessor is entitled to immediate possession of his property and holds an unsecured claim for the unpaid rent. *See In re Elm Inn, Inc.,* 942 F.2d 630, 633–34 (9th Cir.1991).

More importantly, in this case the difference between assumption and rejection determines the outcome of the preference action. If the lease is assumed, the debtor must cure any default. 11 U.S.C. § 365(b). Thus, if rent payments had not been made prepetition, they had to be made at the time of assumption. LCO had to pay Lincoln the full amount of rent (or any lesser amount to which Lincoln agreed) either prepetition or at the time of assumption. For purposes of the "greater amount" test, Lincoln stands in a position similar to that of a secured creditor. If a creditor is fully secured, a prepetition transfer to him is not preferential because the secured creditor is entitled to 100% of his claim. *See In re World Fin. Serv. Ctr., Inc.,* 78 B.R. 239, 241–42 (9th Cir. BAP 1987), *aff'd,* 860 F.2d 1089 (9th Cir.1988); *In re Ludford Fruit Prods., Inc.,* 99 B.R. 18, 22 (Bankr.C.D.Cal.1989). On the other hand, if the lease is rejected, Lincoln would have possession of the property and hold an unsecured claim for unpaid rent. As long as the distribution to unsecured creditors is less than 100%, any rent paid to Lincoln within the preference period and outside the ordinary course of business would be preferential. *See In re Lewis W. Shurtleff,* 778 F.2d at 1421. The liquidation analysis in the dis-

closure statement estimated a 2.4% distribution to unsecured creditors. Accordingly, if the lease is considered to have been rejected, Lincoln must return the $92,007.46 LCO paid in April, May and June.

In this case, the lease was actually assumed. LCO's intent to assume was announced to the creditors when the disclosure statement and plan were distributed and approved by the bankruptcy court when the plan was confirmed. LCO's default was cured as required by § 365(b) and LCO retained possession of the property. The Trustee takes the position that a hypothetical chapter 7 trustee might have rejected the lease. He suggests that the bankruptcy court should exercise its own independent judgment as to whether, if the court were administering the estate under chapter 7, it would have assumed or rejected the lease. Thus, the Trustee seeks to obtain the benefits of both assumption and rejection, *i.e.,* continued possession of the property and recovery of the prepetition rent. That would not be possible in chapter 7. It is not possible in chapter 11.

The Trustee justifies his position by claiming that the court can only consider the state of events on the date of the filing of the petition. Section 547 is silent regarding the point in time for analyzing whether a payment is preferential. The first four elements of § 547(b) focus on the time the payment is made. 4 *Collier, supra,* ¶ 547.08, at 547–42 n. 4. But § 547(b)(5) has been construed to mean that the court must determine the relative positions of the creditors on the date the petition is filed. *See Palmer Clay Prods. Co. v. Brown,* 297 U.S. 227, 229, 56 S.Ct. 450, 451, 80 L.Ed. 655 (1936). In construing the preference provision of the former Bankruptcy Act, the Supreme Court observed that the preferential effect of the payment must be determined "not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results." *Id.*

The principle in *Palmer Clay* was applied by the Sixth Circuit in *In re Tenna Corp.,* 801 F.2d 819 (6th Cir.1986). There, the court held that the amount of postpetition debt, secured by a superpriority lien on all of the debtor's property pursuant to § 364, should not be considered in constructing the hypothetical chapter 7 distribution. *Id.* at 823. The court did not establish an inflexible rule that no postpetition events were to be considered. Indeed, the court acknowledged that administrative expenses, which are necessarily incurred postpetition, should be included in the hypothetical liquidation analysis.

Neither *Palmer Clay* nor *In re Tenna Corp.* prohibit the court from considering the actual facts of the case in ascertaining Lincoln's classification. As Bankruptcy Judge Perris noted, "The hypothetical liquidation under section 547(b)(5) should not ... be conducted in a vacuum." *In re LCO Enters.,* 137 B.R. at 959 (Perris, J., concurring). Here, the lease was assumed. That assumption fixed Lincoln's right to immediate payment in full of the prepetition rent in exchange for LCO's continued possession of the property. The legal effect of that assumption is that the rent payments of $92,007.46 made within the preference period did not operate to improve Lincoln's position.

■ The Trustee's insistence that the court can only consider the facts which existed on the date of the filing does not advance his position that Lincoln should be treated as if the lease had been rejected. In a chapter 7, the debtor has 60 days in which to decide whether to assume or reject a lease of commercial real property. 11 U.S.C. § 365(d). On the date of the filing, the fact was that LCO was in possession of the property and Lincoln was owed prepetition rent. If we focus on that day alone, as the Trustee would have us do, Lincoln's right to payment existed because LCO continued to possess the property. A lessor's right to payment is not converted to an unsecured claim for a sum of money until the lease is rejected and the property surrendered to the lessor. So, on the date of the filing, Lincoln had more than a simple unsecured claim for a sum of money. Lincoln had the right to full payment or return of its property.

We find the reasoning of the Eleventh Circuit in *Seidle v. GATX Leasing Corp.*, 778 F.2d 659 (11th Cir.1985), to be persuasive. In *Seidle,* GATX held a chattel mortgage on the debtor's aircraft which secured payments due under a note given by the debtor. Within the preference period, the debtor made partial payments on the note totaling $326,-902.32. The debtor thereafter filed a chapter 11 petition. GATX had the right to repossess the aircraft on the 61st day of the bankruptcy unless the debtor cured its default on the note. 11 U.S.C. § 1110. GATX and the debtor entered a stipulation, approved by the bankruptcy court, which obligated the debtor to cure its default in exchange for the debtor's continued use of the aircraft. The debtor did not cure its default and GATX repossessed the aircraft. The chapter 11 trustee then sued GATX for $326,902.32 paid during the preference period.

The Eleventh Circuit recognized the inequity inflicted by the trustee's position.

> Under the trustee's proposed interpretation, the debtor, anticipating his impending bankruptcy filing, could make all payments to the financer of the aircraft, creating no pre-petition defaults that would have to be cured under the stipulation. After entering into the stipulation and securing possession of the aircraft, the debtor or trustee could simply reclaim the payments made during the ninety-day pre-petition preference period. This result nullifies the financer's guarantee that the debtor meet all previous contractual obligations in order to retain possession of the aircraft.

*Id.* at 664. For purposes of the § 547(b)(5) analysis, §§ 365 and 1110 place the creditor in the same position and impose the same requirements upon the debtor. Both condition the debtor's continued use of the property on the cure of any default. The stipulation approved by the bankruptcy court in *Seidle* is the equivalent of the assumption of a lease. *See In re Harris Management Co., Inc.,* 791 F.2d 1412, 1414 (9th Cir.1986) (assumption of lease requires express approval

of court upon notice to parties to lease). The Trustee seeks to avoid payments that it was obligated to make pursuant to the court-approved assumption of the lease through confirmation of the plan. The Trustee cannot use § 547(b) to circumvent the requirements of § 365(b).

■ Finally, we address the conclusion of a majority of the Bankruptcy Appellate Panel that an implied preference immunity agreement was integrated into the confirmed plan which precluded the Trustee's suit against Lincoln. A reasonable lessor probably would not agree to the rent concessions made by Lincoln if he also understood that he would have to return the payments made by LCO in a preference action. It is also reasonable to assume that when the parties stipulated that the prepetition arrearage amounted to $177,000, they assumed that the $92,007.46 already paid by LCO would not be returned to LCO's Trustee. However, we are unwilling to elevate those reasonable assumptions into finding as a matter of law that the parties impliedly agreed that Lincoln would be immune from any preference action and incorporated that agreement into the plan. Rather, we can see significant danger in implying critical terms in an agreement between certain parties when other unrelated parties are expected to rely and act upon the terms of that agreement. While it is apparent that the terms of this particular plan were fair to everyone involved,[3] we write on a larger slate—other plans may be problematic. Parties should be encouraged to place the whole story before the creditors and the court.

Nevertheless, we think that the existence or nonexistence of an immunity agreement is irrelevant. Whether or not LCO and Lincoln agreed between themselves that LCO would not seek to recover the prepetition payments, the assumption of the leases in accordance with § 365(b) precludes the Trustee from attempting to recover those payments. The Trustee cannot have his leased property and

---

**3.** Lincoln was owed about $175,496 and had been paid $92,007.46 during the preference period. If the plan were rejected, LCO would have no storage place and Lincoln would have an unsecured claim of $267,503.46. If accepted, Lincoln would keep the $92,007.46, waive $100,-496, and investors would put in $200,000 of new money. Not bad; not unfair.

his rent payments, too. Summary judgment should be entered in favor of Lincoln.

## CONCLUSION

Section 547(b)(5) requires the bankruptcy court to ascertain what the distribution to creditors would be in a chapter 7 case. The phrase "hypothetical chapter 7" which has been used to describe the "greater amount" test does not mean that the bankruptcy court can construct its own hypothetical from whole cloth or from only some of the facts. Specifically, in light of the facts before it, the court could neither speculate that there was no lease nor assume that the lease was rejected. Neither of those assumptions reflected the facts at any time.

Here, the lease existed on the date of bankruptcy and was assumed. That assumption fixed Lincoln's right to prompt payment in full and fixed LCO's right to possess the property. The Trustee would like to have us ignore the undeniable fact that the lease existed before the date of bankruptcy, on the date of bankruptcy, and after the date of bankruptcy. He would like to have us ignore the fact that LCO always had possession of the property. He would also like to have us overlook the fact that Lincoln's right to payment has always existed. However, the fog which sometimes surrounds bankruptcy issues would have to become much more inspissate before we would fail to see those facts. We cannot ignore them or the legal consequences which flow from them. Because the lease was assumed, Lincoln's position was not improved by the prepetition payments within the meaning of § 547(b)(5).

AFFIRMED.

TROTT, Circuit Judge, concurring in part and dissenting in part:

It does seem unfair that the Trustee seeks to "have his leased property and his rent payments, too." The majority is confident that LCO and Lincoln never intended this result, and I agree. If Lincoln insisted that the Plan of Reorganization contain a provision protecting the $92,007.46 in rent payments from preference attack, LCO and its creditors probably would have agreed to that

protection. Unfortunately, the parties did not provide for the rent payments, and this litigation ensued. The majority is willing to construe the Bankruptcy Code to ameliorate the oversight, I am not.

Let me begin by noting my agreement with the majority's rejection of the implied preference immunity agreement. What enormous mischief can result from permitting such agreements *not* to be brought to the table in a chapter 11 setting. Chapter 11 requires full disclosure so that all parties can make an informed decision on the reorganization plan. I think this unsupportable conclusion led the Bankruptcy Appellate Panel astray, influencing their entire analysis.

I disagree, however, with the majority's reliance on § 365 of the Bankruptcy Code to resolve this dispute. The majority stresses that § 365 required LCO to cure any rent default or return Lincoln's property depending on whether LCO assumed or rejected the leases. I think the majority overstates the relevance of § 365. LCO did not assume the leases pursuant to § 365. LCO assumed the leases pursuant to an approved plan of reorganization in which Lincoln agreed to reduce its claim rather than demand full cure under § 365. Assumption under § 365 would have required LCO to cure *all* defaults. LCO's Plan of Reorganization did not. With all due respect to the majority, I think they let the inspissate fog obscure the actual Plan of Reorganization.

If rejection and assumption of the actual leases are so important, then the majority should explain the Plan of Reorganization's inconsistent treatment of the three leases. Payments on LCO's five-year lease with Lincoln ("Long Term Lease") accounted for over one-third of the challenged preference payments. On page five of the Plan of Reorganization, LCO rejected the Long Term Lease, but on page seven it listed the lease as assumed. If the Long Term Lease was rejected, then under the majority's reading, Lincoln had no right to the rent payments— it only had a right to the return of its property.

In my opinion, the better approach is to follow the test outlined in § 547(b)(5): a liquidation analysis as though "the case were

under chapter 7 of this title." '11 U.S.C. § 547(b)(5) (1988). Chapter 7 it is, and chapter 7 it must be. As the majority concedes, courts have consistently held that the liquidation analysis should be conducted as of the date the petition in bankruptcy is filed. *See Palmer Clay Prods. Co. v. Brown,* 297 U.S. 227, 229, 56 S.Ct. 450, 450, 80 L.Ed. 655 (1936); *Taunt v. Fidelity Bank (In re Royal Golf Prods. Corp.),* 908 F.2d 91, 95 (6th Cir. 1990); *Neuger v. United States (In re Tenna Corp.),* 801 F.2d 819, 822 (6th Cir.1986); *McGoldrick v. Juice Farms, Inc. (In re Ludford Fruit Prods., Inc.),* 99 B.R. 18, 24 (Bankr.C.D.Cal.1989); 4 *Collier on Bankruptcy* ¶ 547.08 at 547–42 (Lawrence P. King, ed., 15th ed. 1989).

On the date LCO filed its petition in bankruptcy, LCO's Plan of Reorganization had not yet been filed or confirmed. On that date, LCO was not required to assume the leases. Under § 365(d)(1), if the trustee did not assume the leases within 60 days, the leases would be deemed rejected. Therefore, I agree with the bankruptcy court that a disputed issue of material fact remains: would a trustee in a hypothetical chapter 7 case assume or reject the leases on the petition date. *See Walsh v. Lincoln Alvarado (In re LCO Enters.),* 116 B.R. 188, 192 (Bankr.N.D.Cal.1990). This inquiry requires an analysis of the leases' liquidation value on the filing date.

The majority protests that it refuses to ignore the "actual fact" that LCO agreed to assume the leases as part of its Plan of Reorganization. Unfortunately, the majority's fidelity to the "actual facts" ignores the command of the "actual statute"— § 547(b)(5). We must evaluate the alleged preference under the principles of *chapter 7,* while LCO decided to assume the lease in the context of *chapter 11.* LCO assumed the leases because they were critical to the continued operation of LCO's business. Under chapter 7, a trustee will only assume a lease if she can cure the defaults and sell the lease to another party at a profit. Or, the trustee may assume a lease for a brief period of time to accomplish an orderly liquidation. *See* 11 U.S.C. §§ 704, 724 (1988). The trustee's goal is not the continued operation of the business, rather, it is the maximization of the estate's liquidation value for the benefit of the creditors.

The Sixth Circuit's decision in *In re Tenna* is a good example of how § 547(b)(5) should be applied. The majority briefly discusses the decision, but I think a fuller explanation will highlight the majority's departure from the sound approach of *In re Tenna.* In that case, Tenna originally filed for chapter 11 bankruptcy. During the chapter 11 proceedings, Tenna borrowed additional money, and the bankruptcy court granted superpriority liens to the new lenders. Nevertheless, the reorganization was unsuccessful, and ten months later the case was converted to a chapter 7 proceeding. The chapter 7 trustee then filed a preference action against the Internal Revenue Service attacking a tax payment made within ninety days prior to the filing of the chapter 11 petition. The critical issue was the date on which the § 547(b)(5) liquidation analysis should occur. If it was the date the original petition was filed, the tax payment was not a preference. If it was the date of the subsequent adversary hearing, the tax payment was a preference because of the intervening superpriority liens.

The Sixth Circuit held the chapter 7 analysis should occur as of the filing date of the bankruptcy petition. *Tenna,* 801 F.2d at 822. The court rejected the trustee's argument that the "actual result" language of *Palmer Clay* required the inclusion of the postpetition debt incurred pursuant to a chapter 11 reorganization. *Id.* The court believed Congress' concern for equality of distribution among creditors prevented the estate's trustee from controlling the timing of the § 547(b)(5) test. *Id.* at 823.

The majority tries to limit *In re Tenna* by stating that it "did not establish an inflexible rule that no postpetition debts were to be considered." The majority notes *Tenna* court's acknowledgment that administrative expenses, which are necessarily incurred postpetition, should be included in the chapter 7 liquidation analysis. The majority, however, omits the context for that statement:

It proves too much, however, to assume that including administrative expenses incurred during the reorganization must, by necessity, show a Congressional intention that all debts incurred during reorganization be included. Administrative expenses are a constant element in all bankruptcy proceedings and can be derived with some degree of certainty, even when constructing a hypothetical liquidation....

*Id.*

The majority's opinion cannot be squared with *In re Tenna.* Under *In re Tenna,* the chapter 7 analysis must occur as of the filing date of the bankruptcy petition. As discussed previously, LCO was not yet bound to assume or reject the leases on that date. Moreover, the majority's analysis of the "actual facts" looks like the "actual results" argument rejected by the *In re Tenna* court.

Instead, the majority finds the reasoning of the Eleventh Circuit in *Seidle v. GATX Leasing Corp.,* 778 F.2d 659 (11th Cir.1985), persuasive. I do not. First, the *Seidle* court failed to discuss the case law requiring that the chapter 7 analysis occur as of the filing date of the bankruptcy petition. *See Gosch v. Burns (In re Finn),* 86 B.R. 902, 904 (Bankr.E.D.Mich.1988) (rejecting *Seidle* because § 547(b)(5) analysis "must be undertaken as of the moment of bankruptcy, and not some later, unspecified date"), *aff'd* 111 B.R. 123 (E.D.Mich.1989), *rev'd on other grounds,* 909 F.2d 903 (6th Cir.1990). Second, the *Seidle* court's conclusion that the creditor did not improve its position because a postpetition agreement entitled the creditor to all the preferential payments does not apply to the present case. The debtor in *Seidle* promised to pay its creditor and cure all defaults pursuant to a court-approved stipulation, which the majority describes as equivalent to LCO's assumption of the leases. However, LCO did not agree to cure all defaults as a condition of assuming the leases. In fact, the Plan of Reorganization provided that Lincoln waived any and all claims it held for overdue rents owed as of May 31, 1989.

I cannot join the majority's opinion because I think it ignores the text of § 547(b)(5) in its attempt to reach an "equitable" result. If the statute requires a chapter 7 analysis to be conducted in a "vacuum," excluding postpetition events, then into the vacuum we must go. If Lincoln and LCO wanted to avoid being sucked into the vacuum of § 547(b)(5), the Plan of Reorganization should have addressed the $92,007.46 in rent payments made by LCO on the verge of bankruptcy.

The majority saves Lincoln, but muddles the statute. Instead of a bright-line rule evaluating potential preferences as of the filing date of the bankruptcy petition, the majority clouds the analysis with a new exception. Now, some postpetition events will be considered, and the liquidation analysis will be conducted on a later date which the court deems appropriate. Analyzing a hypothetical chapter 7 liquidation is hard enough without interjecting uncertainty as to the date of that analysis. I think a good vacuum might help clear away some of this fog.

Therefore, I dissent.