Dale A. PRICE, Plaintiff-cross-defendant-Appellant,

v.

Thomas SEYDEL and Nalani Seydel, husband and wife, Defendants-cross-claimants-Appellees.

No. 90–35815.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 1992.

Decided April 24, 1992.

---

William W. Klein, Baker & Klein, San Ramon, Cal., for plaintiff-appellant.

Timothy R. Volpert, Myles A. Conway, Davis Wright Tremaine, Portland, Or., for defendants-appellees.

Before: BROWNING, WRIGHT and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Dale Price appeals the district court's judgment in favor of defendants Thomas and Nalani Seydel in Price's fraud action. Price alleges that the Seydels sold him a motel in Ontario, Oregon after misrepresenting its earning potential. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS

On December 4, 1981 the Seydels agreed to sell Price the Stampeder Motel in Ontario, Oregon. Apparently, the Stampeder's performance was not what Price expected nor, he alleges, what the Seydels represented it would be.

Price filed a fraud action against the Seydels. He alleged that the Seydels kept two sets of books, one showing yearly net income of $90,000 and the other showing a net income of $140,000. The lower figure, Price alleges, represented the actual yearly income of the Stampeder and the inflated figure was used to make the property more attractive to potential buyers. Price purchased the property relying on the higher figure.

Price's action against the Seydels did not proceed smoothly. He asserts that he was unable to locate them to serve process. He tried to find them in Bend, Oregon, where Thomas Seydel's brother-in-law said they resided. The Bend post office gave Price a Yreka, California forwarding address. Price hired a private investigator to find the Seydels in Yreka. The investigator determined that the Seydels did not live in Yreka and had never lived in Yreka. Price, however, never attempted to contact the Seydels at a St. Cloud, Minnesota forwarding address that appeared on the warranty deeds given to Price by the Seydels.

After those efforts to personally serve the Seydels, Price asked the district court for authority to serve notice by publication. His motion was granted. Price then ran an announcement on four separate occasions in the Daily Journal of Commerce and again in the Portland Business Today. The Seydels did not respond and on January 2, 1986 a default judgment was entered against them. In October 1989, the Seydels became aware of Price's default judgment. They moved the court to stay enforcement proceedings and to set aside the judgment. On November 27, 1989, the magistrate judge granted the motion and reinstated the case.

On June 5, 1990, trial was held before the magistrate judge. The magistrate judge had granted the Seydels' in limine motions to exclude testimony concerning the Seydels' unrelated past business transactions and to exclude evidence of a second set of books.

Price presented his case. Price was the only witness called. Thomas Seydel was listed as a witness on the Seydels' witness list, but his name did not appear on Price's list of witnesses. Nonetheless, Price asked to call Thomas Seydel as a witness in his case-in-chief. The Seydels objected and the court sustained their objection. Price's attorney asked that he be allowed to keep his case open in order to cross-examine Thomas Seydel once he was called by the defense. The magistrate judge honored the request, but Price's attorney rested his case anyway. The Seydels moved for a directed verdict which the magistrate judge granted on June 6, 1990. Judgment in

favor of the Seydels was entered on October 1, 1990.

## JURISDICTION

The district court had jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332. The Seydels contest our jurisdiction. We find that Price's appeal from the judgment was timely, and thus we have jurisdiction to review it under 28 U.S.C. § 1291.

Filing of the notice of appeal within the thirty day period specified in Fed.R.App.P. 4(a)(1) is mandatory and jurisdictional. *Farley Transp. Co., Inc. v. Santa Fe Trail Transp. Co.*, 778 F.2d 1365, 1368 (9th Cir.1985). Unless the appellant's notice is timely, the appeal must be dismissed. *Id. See also Alaska Limestone Corp. v. Hodel*, 799 F.2d 1409, 1411 (9th Cir.1986).

Nevertheless, the time for taking an appeal does not begin to run until judgment is entered pursuant to Fed.R.Civ.P. 58. While the magistrate judge ordered that judgment be entered on June 6, 1990, entry did not take place until October 1, 1990. A notice of appeal may be filed before judgment is entered, if it is filed after the "announcement of a decision or order." Fed.R.App.P. 4(a)(2). A "technically premature" notice is deemed filed on the date the judgment is entered. *Id. See also Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 430 (2d Cir. 1989). Price's notice of appeal, although "technically premature," preserved all issues for appeal because the judgment was not entered until October 1, 1990, a week after Price filed his notice of appeal.

Moreover, the appeal from the order granting the motion to vacate the Seydels' default was also timely. It, too, had to await the entry of final judgment. *See Jones & Guerrero Co., Inc. v. Sealift Pacific*, 650 F.2d 1072, 1073 (9th Cir.1981); *Resnik v. La Paz Guest Ranch*, 289 F.2d 814, 817 (9th Cir.1961).

## DISCUSSION

### A. *Vacation of the Default Judgment*

We review for clear error the district court's factual findings with respect to Rule 60(b) motions to set aside a default judgment. *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir.), *cert. denied*, 484 U.S. 976, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987). We will not reverse a district court's decision to set aside a default judgment absent a "*clear showing* of abuse of discretion." *Id.* (quoting *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir.1985)).

"A district court has the discretion to deny a Rule 60(b)(1) motion ... if (1) the defendant's culpable conduct led to the default, (2) the defendant has no meritorious defense, or (3) the plaintiff would be prejudiced if the judgment is set aside." *Meadows*, 817 F.2d at 521.

Price failed to establish any of these prongs. "A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer." *Id.* No evidence points to the Seydels' culpability. Price readily admits that the defendants did not have actual notice. He further admits that the Seydels probably did not receive notice by Price's publication in Oregon business journals. Nothing in the record supports the conclusion that the Seydels were aware of the action yet "failed to answer." *See id.* Moreover, Price actually had a forwarding address for the Seydels but never bothered to use it. The Seydels conduct was not culpable.

Nor is it the case that the Seydels had no meritorious defense. The magistrate judge found that Price had failed to state a claim for misrepresentation, and he directed the verdict in favor of the Seydels accordingly. Moreover, during the hearing on the motion to set aside the default judgment, the magistrate judge asked the Seydels' attorney what defense he planned to mount if the judgment was vacated. The attorney alleged various defenses based on the contract.

Finally, Price denied that he would be prejudiced if the judgment were set aside. There is no clear showing that the magistrate judge abused his discretion in vacating the default judgment. *See Pena,* 770 F.2d at 814.

## B. *The Evidentiary Rulings*

■ A district court's evidentiary rulings are reviewed for an abuse of discretion and will not be reversed unless the party has been prejudiced. *Roberts v. College of the Desert,* 870 F.2d 1411, 1418 (9th Cir.1988).

### 1. Calling Thomas Seydel as a Witness

■ Price contends that the magistrate judge erred in denying his request to call Thomas Seydel as a witness. A court may exclude testimony from witnesses not listed in the pretrial witness list. We have not heretofore descanted upon the test that should be used when there is a motion to call a witness who is not included on a pretrial witness list. A number of other courts have discussed the issue and have concluded that the following factors should be considered:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified;
> (2) the ability of that party to cure the prejudice;
> (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court;
> (4) bad faith or willfulness in failing to comply with the court's order.

*Spray–Rite Serv. Corp. v. Monsanto Co.,* 684 F.2d 1226, 1245 (7th Cir.1982), *affirmed on other grounds,* 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). Similar rules have been stated in other circuits. *See Adalman v. Baker, Watts & Co.,* 807 F.2d 359, 369 (4th Cir.1986); *United States v. Koziy,* 728 F.2d 1314, 1320–21 (11th Cir.), *cert. denied,* 469 U.S. 835, 105 S.Ct. 130, 83 L.Ed.2d 70 (1984); *Meyers v. Pennypack Woods Home Ownership Assoc.,* 559 F.2d 894, 904–05 (3d Cir.1977). We agree with the Seventh Circuit's formulation and now adopt it.

■ Application of those factors shows that the magistrate judge abused his discretion by refusing to allow Price to call Thomas Seydel as a witness. Thomas Seydel was listed as a witness on the defense's pretrial witness list. He expected to be rigorously cross-examined by Price's attorney when he took the stand. Moreover, in general, "a party to a suit has the right to call another party as an adverse witness at any time in a trial when both sides are aware that a party has relevant knowledge of the facts at issue." *Morfeld v. Kehm,* 803 F.2d 1452, 1455 (8th Cir.1986) (reciting *Spray–Rite* factors). The prejudice to the Seydels was slight. There is no evidence that Price wished to call Thomas Seydel in order to surprise the defense or that he had willfully or in bad faith disregarded the court's pretrial order. Moreover, Thomas Seydel's testimony was crucial to Price's case. He could have confirmed or denied Price's claim about misrepresentations. As it was, Price's case inevitably collapsed when he was prevented from calling Thomas Seydel.

■ We recognize that when the magistrate judge denied Price's request to call Thomas Seydel as a witness he stated that Price could keep his case open until he had had an opportunity to examine him. Nonetheless, Price's attorney rested his case shortly thereafter. Because Price had rested his case and the Seydels declined to put on a defense, the magistrate judge might have felt he had no choice but to rule on the Seydels' motion for a directed verdict at that point. Still and all, once the magistrate judge precluded Price from calling Thomas Seydel as a witness, the remaining proceedings were a foregone conclusion. The Seydels had no reason to put on a defense at that point, and as the case then stood, a directed verdict would follow as the night the day. Thus, on balance, we conclude that Price did not waive the issue and that the magistrate judge's refusal to allow Price to call Thomas Seydel was prejudicial and mandates reversal.

### 2. Evidence of Two Sets of Books

■ The magistrate judge excluded evidence of the second set of books showing

$90,000 of income because Price's attorney stated that he relied on the books which Thomas Seydel told him reflected the actual income of the Stampeder—$140,000.

The magistrate judge presumed that if two sets of books were kept, the purpose was to defraud the IRS, not prospective buyers. In that case, the falsified books would have been the ones showing income at only $90,000 and the accurate or "true" books would reflect income of $140,000. Fed.R.Evid. 404(b) would then have supported exclusion. In his complaint, Price had alleged just the opposite: his theory was that the "true" books reflected the $90,000 income and the falsified books showed income of $140,000. On that theory, he would not have sought to admit evidence of both sets to show that the Seydels cheated on their taxes, but to prove that they misrepresented the earnings potential of the Stampeder. The evidence that the Seydels had two sets of books would then have been the linchpin of Price's misrepresentation action. On that theory, the evidence would have been properly admissible and the magistrate judge may well have abused his discretion in excluding the evidence under Rule 404(b).

Yet one searches Price's trial brief and the transcript in vain for a clear statement by Price's attorney that his theory was what Price now says it was. A proper offer of proof would have avoided this problem. Fed.R.Evid. 103(a)(2). At any rate, Price can seek to rectify the problem by making his position clear in any new proceedings in the district court.

C. *Attorneys' Fees*

Price earnestly argues that the district court erred in awarding the Seydels attorneys' fees because they were prevailing parties. Our reversal of the court's decision on other grounds necessarily sets aside the award of fees. Nevertheless, in the interest of judicial economy we address the issue.

■■■■ We review the district court's findings of fact supporting its decision to award or not award attorneys' fees for clear error. *See Kruso v. International*

*Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). The district court's application of state law to the facts is reviewed de novo. *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). If the district court applied the correct legal standard, however, both the decision to award fees and the amount of fees to be awarded are reviewed for an abuse of discretion. *Perry v. O'Donnell*, 759 F.2d 702, 704 (9th Cir.1985).

■■■■ A federal court sitting in diversity applies state law in deciding whether to allow attorney's fees when those fees are connected to the substance of the case. *Shakey's Inc. v. Covalt*, 704 F.2d 426, 435 (9th Cir.1983). Oregon Revised Statute § 20.096(1) permits the court to award attorney's fees and costs incurred in proceedings to enforce a contract. Or.Rev.Stat. § 20.096(1). The magistrate judge found that section 20.096(1) applied to this case and awarded the Seydels $35,005.15 in attorney's fees and costs.

In so doing the magistrate judge properly applied section 20.096. He found that the language in the parties' form "Exchange Agreement" authorized him to award attorney's fees and relied on *Millard v. Smedes*, 42 Or.App. 889, 601 P.2d 908, 909 (1979). In *Millard*, the seller contested an award of attorney's fees on the ground that the buyer's action was not based on contract, but on the tort of misrepresentation. The court, however, found that by opting to sue for money damages rather than rescinding the contract the buyer affirmed the contract. *Id.* The contract allowed the prevailing party to recover attorney's fees in any action "in connection with" the contract. The court found the misrepresentation action was "in connection with" the contract, and thus reasonable fees were warranted. *Id.* In this case, Price similarly chose to affirm the contract by suing for money damages rather than rescission. *See Bridgmon v. Walker*, 218 Or. 130, 134–35, 344 P.2d 233, 235 (1959). Thus we find the reasoning in *Millard* to be clearly on point. Attorneys' fees may be redetermined under section

20.096(1) at the conclusion of proceedings in the district court.

### CONCLUSION

We are constrained to reverse the judgment because the magistrate judge improperly precluded Price from calling Thomas Seydel to the witness stand. We say "constrained" because we do not mean to suggest that we have found merit in Price's action. We express no views on the merits.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings. The parties shall bear their own costs on appeal.