In re LCO ENTERPRISES, INC., Debtor.

Lincoln ALVARADO, Patrician Association, Inc., and LPC Alvarado Phase II, Appellants,

v.

Edward M. WALSH, Trustee, Appellee.

BAP No. NC–94–1762–AsVMe.
Bankruptcy No. 4–89–02673 J2.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 23, 1995.

Decided April 19, 1995.

Michael St. James, San Francisco, CA, for appellants.

Joseph K. Falzon, San Francisco, CA, for appellee.

## OPINION

Before ASHLAND, VOLINN and MEYERS, Bankruptcy Judges.

ASHLAND, Bankruptcy Judge:

LCO Enterprises leased warehouse space from Lincoln. LCO and Lincoln amended their lease agreement to lessen the amount of the lease payments and the leased space, and to lengthen the lease. LCO assumed the lease in their bankruptcy. The trustee unsuccessfully attempted to recover pre-petition lease payments for the estate as preferential transfers. Lincoln prevailed and sought attorneys' fees based upon § 365(b)(1)(B) and the attorneys' fees clause in the lease agreement. The bankruptcy court declined to award attorneys' fees to Lincoln. Lincoln timely appealed. We affirm.

### FACTUAL SUMMARY

LCO Enterprises, Inc. operates a public warehouse. LCO leases space in a warehouse from lessors Lincoln Alvarado partnership, Patrician Associates, Inc., and LPC Alvarado Phase II. LCO could not make their warehouse payments to Lincoln. As a result, LCO and Lincoln amended their agreement to decrease the leased space, decrease the rent, and increase the duration of the lease. Lincoln also agreed to accept a partial payment of $75,000 over four years in lieu of the $174,496 in accrued and unpaid rent payments.

LCO Enterprises filed a voluntary Chapter 11 petition on June 13, 1989. A pre-packaged plan which included all of the terms of the amended lease was confirmed on July 21, 1989. An amended order confirming the plan was filed September 13, 1989. Edward Walsh was appointed pursuant to the confirmed plan on July 21, 1989, and was granted only the limited power to act as a disbursing agent, to object to claims, and to investigate and pursue preferential or fraudulent transfers.

On November 30, 1989 Walsh filed an adversary proceeding to recover alleged preferential transfers to Lincoln. The transfers to Lincoln were rent payments paid under the

assumed lease. The bankruptcy court determined that these payments were preferential transfers. *In re LCO Enterprises,* 116 B.R. 188 (Bankr.N.D.Cal.1990). Lincoln appealed and both the BAP and the Ninth Circuit held that since when a lease is assumed the defaults must be cured, the prior payments are not avoidable preferential payments. *In re LCO Enterprises,* 137 B.R. 955 (9th Cir. BAP 1992); *In re LCO Enterprises,* 12 F.3d 938 (9th Cir.1993). "Because the lease was assumed, Lincoln's position was not improved by the pre-petition payments within the meaning of § 547(b)(5)." *LCO Enterprises,* 12 F.3d at 944.

Lincoln filed a motion for attorneys' fees associated with the preference action, citing both § 365(b)(1)(B) and the attorneys' fees clause in the underlying lease agreement. The bankruptcy court denied attorneys' fees, and Lincoln timely appealed.

### STANDARD OF REVIEW

"Findings of fact are reviewed under the clearly erroneous standard, while conclusions of law are reviewed *de novo.*" *Takisaki v. Alpine Group, Inc. (In re Alpine Group, Inc.),* 151 B.R. 931, 934 (9th Cir. BAP 1993), citing, *In re Holm,* 931 F.2d 620, 622 (9th Cir.1991); *In re Acequia, Inc.,* 787 F.2d 1352, 1357 (9th Cir.1986); Federal Rule of Bankruptcy Procedure 8013.

"We review the district court's findings of fact supporting its decision to award or not award attorneys' fees for clear error." *Price v. Seydel,* 961 F.2d 1470, 1475 (9th Cir.1992); *see, Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989). "If the [original] court applied the correct legal standard, however, both the decision to award fees and the amount of fees to be awarded are reviewed for an abuse of discretion." *Price,* 961 F.2d at 1475, citing, *Perry v. O'Donnell,* 759 F.2d 702, 704 (9th Cir.1985).

### ISSUE PRESENTED

Whether the bankruptcy court erred in refusing to award attorneys' fees for the costs associated with defending against an attempt to classify pre-petition payments made pursuant to an assumed lease as preferential transfers.

### DISCUSSION

There are two generally accepted principles which address the allocation of attorneys' fees in federal courts. The first is the "American Rule". The second is the attorneys' fee clause which may be found in the underlying agreement. Lincoln asserts that attorneys' fees can be reallocated under § 365(b)(1)(B), and that will also be discussed.

### 1. *General Rule In Federal Courts*

#### A. *The American Rule*

■ The seminal case dealing with attorneys' fees in federal court is *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Both the BAP and the Ninth Circuit have recently utilized the American Rule as it is set forth in *Alyeska,* thereby showing its continued acceptance in the Ninth Circuit. *Sterling Federal Systems, Inc. v. Goldin,* 16 F.3d 1177, 1183 (Fed.Cir.1994); *Modzelewski v. Resolution Trust Corp.,* 14 F.3d 1374, 1379 (9th Cir.1994); *Heckethorn v. Sunan Corp.,* 992 F.2d 240, 242 (9th Cir.1993); *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, International Brotherhood of Teamsters,* 989 F.2d 1077, 1084 (9th Cir. 1993); *Bank of Los Angeles v. Official PACA Creeditors' Committee (In re Southland + Keystone),* 132 B.R. 632, 643 (9th Cir. BAP 1991).

The Supreme Court in *Alyeska* went to considerable lengths to trace the development of the "American Rule": "the prevailing party may not recover attorneys' fees as costs or otherwise." The court then discussed exceptions to the "American Rule."

What Congress has done, however, while fully recognizing and accepting the general rule, is to make specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights.... [I]t is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts is

making those awards are matters for Congress to determine.

*Alyeska,* 421 U.S. at 260–62, 95 S.Ct. at 1623–24.

The currently recognized exceptions include bad faith, common benefit, or the vindication of important statutory rights of all citizens. *Alyeska,* 421 U.S. at 245, 95 S.Ct. at 1616. "Also, a court may assess attorneys' fees for the 'willful disobedience of a court order' ... or when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons....'" *Alyeska,* 421 U.S. at· 258–59, 95 S.Ct. at 1622 (citations omitted). The *Alyeska* court stated that after the lengthy evolution of the attorneys' fees provisions represented in the "American Rule," absent legislative guidance any judicial changes to the fees allocation would be inappropriate. "[H]aving considered its origin and development, we are convinced that it would be inappropriate for the Judiciary, without legislative guidance, to reallocate the burdens of litigation...." *Alyeska,* 421 U.S. at 247, 95 S.Ct. at 1616.

The American Rule does not provide for attorneys' fees in this case. The American Rule applies in federal court, and it is undisputed that bankruptcy courts are federal courts. None of the exceptions are applicable to this fact pattern. The trustee pursued a alleged preferential transfer. There were no indications in the record that there was any bad faith involved. Similarly there was no common benefit being pursued or important statutory rights being vindicated. Finally, there was no oppression, wanton act, or willful disobedience of a court order. We therefore find that the American Rule provides no authority for the transfer of the attorneys' fees from the prevailing party to the losing party.

### B. *Fee Shifting In Bankruptcy*

 The legislature is the entity that is authorized to reallocate the fees in federal court. *Alyeska,* 421 U.S. at 247, 95 S.Ct. at 1616–17. We therefore turn to the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure to see if there is a specific provision which allows the fees to be shifted from the prevailing party to the losing party.

"What Congress has done, however, while fully recognizing and accepting the general rule, is to make specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights." *Alyeska,* 421 U.S. at 260, 95 S.Ct. at 1623. "Congress itself presumably has the power and judgment to pick and choose among its statutes and to allow attorneys' fees under some, but not others." *Alyeska,* 421 U.S. at 263, 95 S.Ct. at 1625. The *Alyeska* court concluded from the selective treatment of attorneys' fees that where an award of attorneys' fees is not expressly authorized they should be denied. In the absence of such a fee shifting provision, the American Rule will not permit the fees to be reallocated.

Congress has created attorneys' fees provisions in some statutes. For example, § 362(h) allows for the payment of attorneys' fees for willful violations of the automatic stay. *Havelock v. Taxel (In re Pace),* 159 B.R. 890, 902 (9th Cir. BAP 1993); 11 U.S.C. § 362(h). Section 506(b) is another section which provides for the payment of an oversecured creditor's attorneys' fees if their agreement so provides. However, Lincoln cites to no similar provision or legislative history surrounding either § 547 or § 365. Based upon the record before us, we do not find support for an award of attorneys' fees under either § 547 or § 365.

### 2. *Contractual Attorneys' Fee Clause*

 Lincoln relies upon the attorneys' fees clause in the lease agreement with LCO as a basis for charging LCO with the attorneys' fees incurred in defending the preference litigation. While it may be true that attorneys' fees are recoverable if they are linked to litigation seeking to enforce a contract, these fees were not so incurred. "(W)hile both contracts provided for attorneys' fees, this action was not one for the enforcement of the contracts." *Collingwood Grain, Inc. v. Coast Trading Company, Inc. (In re Coast Trading Company, Inc.),* 744 F.2d 686, 693 (9th Cir.1984).

·This litigation was based wholly in bankruptcy law, as preferential transfers are not avoidable outside the bankruptcy context in

the same way that they can be recovered under 11 U.S.C. § 547.

> [T]he applicability of the bankruptcy laws to particular contracts is not a question of enforceability of a contract but rather involves a unique, separate area of federal law. Absent bad faith or harassment, attorneys' fees are not available for the litigation of federal bankruptcy issues under a contract which provides for attorneys' fees for enforcement of the contract.

*Coast Trading,* 744 F.2d at 693. *See, In re Fulwiler,* 624 F.2d 908, 910 (9th Cir.1980) (per curiam).

Here, the litigation surrounded the recovery of LCO's payments to Lincoln. Lincoln points to *Stitt v. Williams,* 919 F.2d 516 (9th Cir.1990) and *United States ex rel. Reed v. Callahan,* 884 F.2d 1180 (9th Cir.1989), *cert. denied,* 493 U.S. 1094, 110 S.Ct. 1167, 107 L.Ed.2d 1069 (1990), for the proposition that any litigation which involves an enforceable contract necessarily is bound by that contract's attorneys' fees provisions. The flaw in Lincoln's reasoning is their failure to recognize the difference between litigation based upon the contract (*Stitt & Callahan* ) and litigation which is not based upon the contract (*Alyeska* ). The asserted rationale for recovery of the pre-petition payments was unique to bankruptcy. This recovery was not based upon fraud or RICO violations in the formation and administration of a partnership, as was the litigation in *Stitt.* This recovery was also not based upon the Miller Act, an Act which has long been held to require the application of state law. *Callahan,* 884 F.2d at 1185. Rather, this recovery was based wholly upon bankruptcy provisions. We, therefore, hold that this was not an action under the contract which gives effect to the attorneys' fees clause in the contract.

### 3. *Section 365(b)(1)(B)*

▮ Lincoln relies upon § 365 as the source allowing the awarding of attorneys' fees in the bankruptcy context. Section 365 states:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> . . . .
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default;
>
> . . . .

11 U.S.C. § 365(b)(1)(B).

Lincoln asserts the requirement that "the trustee ... compensate ... a party ... for any actual pecuniary loss resulting from such default" includes attorneys' fees. However, the § 547 litigation was not the result of LCO's default under the lease, as Lincoln asserts, but rather was the result of the application of bankruptcy laws to payments made by LCO to Lincoln. These payments could have been pursued by the trustee whether there was a default under the lease, a payment made on a car purchase agreement, or the payment of a state court judgment. These actions were not pursued solely due to LCO's default.

Had the trustee prevailed in the § 547 preference action, § 365's cure provisions would have required the repayment of the expunged preference payments prior to assumption of the lease. The necessity of repaying the preferences was certainly an underlying motivation for refusing to classify the prepetition payments made under an assumed contract as avoidable preferences under § 547, when the avoidable preferences would have to have been repaid upon assumption. The reasoning of the BAP and the Ninth Circuit in reversing the classification of these payments as avoidable preferences is only relevant here to demonstrate that the litigation was bankruptcy law related and not related to enforcement of the underlying contract. Section 365(b)(1)(B) does not encompass the attorneys' fees at issue in this appeal.

### CONCLUSION

The well established American Rule does not permit the prevailing litigant to recover

attorneys' fees in this case. There is also no support for Lincoln's position anywhere in the bankruptcy code. We affirm.