**In re Bruce F. DAILEY, Michaele P. Dailey, Debtors.**

**No. 02–30650–11.**

United States Bankruptcy Court, D. Montana.

Feb. 20, 2003.

 

8. Debtor agreed to pay 4.3% through her plan.

Pierre L. Bacheller, II, Billings, MT, for BMW Financial Services.

James Craig Bartlett, Kalispell, MT, for Bruce F. Dailey and Michaele P. Dailey.

Jon R. Binney, Missoula, MT, Sean Cork, Phoenix, AZ, for Best Western International Inc. and GMAC.

Victoria Laeder Francis, Billings, MT, for United States of America Department of Treasury Internal Revenue Service.

W. Carl Mendenhall, Worden, Thane & Haines, P.C., Missoula, MT, Sean M. Morris, Missoula, MT, for Hell Gate Elks Lodge # 383.

Daniel S. Morgan, Missoula, MT, for Mary Taulbee.

James J. Screnar, Helena, MT, for Montana Department of Revenue and Montana Dept. of Justice.

Frederick F. Sherwood, Helena, MT, for Mountain West Bank N.A.

Brian J. Smith, Missoula, MT, for Martha M. Berlin.

### *ORDER*

JOHN L. PETERSON, Bankruptcy Judge.

At Butte in said District this 20th day of February, 2003.

In this Chapter 11 case, Worden, Thane & Haines, P.C., attorneys-at-law, have filed an "Application for Professional Fees and Costs—Final Application" ("Application") on behalf of the Hellgate Elks Lodge No. 383 of Missoula ("Elks Lodge") requesting attorney's fees of $3,881.50 plus costs of $257.18 for a total of $4,138.68. The Application was filed on January 22, 2003, after confirmation of the Debtors' Chapter 11 Plan, and pursuant to Montana Local Bankruptcy Rule 2002–4, the Debtor was advised to object to the Application within 10 days and then the responding party should schedule a hearing. The Notice states "the court may grant the relief requested as a failure to respond by any entity shall be deemed an admission that the relief requested should be granted." No response has been filed by the Debtors, and no hearing has been requested by either party.

█ Even though the Debtors have failed to respond to the Application, the local rule is permissive ("may") and relief may be denied if the Application has no legal basis, as other parties-in-interest in this estate may be affected by the award of the fees and costs. This Court recently wrote on February 12, 2003, in its Order granting fees and costs to the Debtors' counsel as follows:

> Notwithstanding the absence of opposition to this Application, this Court has an independent obligation to review each application to evaluate the propriety of the compensation requested. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3rd Cir.1994); *In re Wildman*, 72 B.R. 700, 701 (Bankr.N.D.Ill.1987). *See also, In re WRB–West Associates*, 9 Mont. B.R. 17, 18–20 (Bankr.Mont.1990) (The bankruptcy court has an independent judicial responsibility to evaluate fees requested from the estate and the burden of proof to show entitlement to all fees re-

quested from the estate is on the applicant.)

█ The Court has reviewed the Final Application and finds from the billing records running from 8/13/02 through 1/15/03, that the legal services for the fees requested were in mostly all respects dealing with a review and filing objection to the Debtors' disclosure statement, researching the Elks Lodge's right to vote on the plan, preparing for a Rule 2004 examination of Debtor Bruce Dailey, researching 11 U.S.C. § 365 on the procedure to assume or reject an executory contract and preparing for the confirmation hearing. The total hours expended were 33.90 billable hours.

In prior proceedings in this case the Court granted the Debtors' motion to assume an executory contract under § 365 of the Code, which involved a land lease on which is constructed a motel which is operated by the Debtor (Executive Motor Inn). The Debtor was ordered to cure the prepetition default and make adequate assurances for future performance. The cure has occurred and the confirmed Plan provides for adequate assurance of future performance. Under the lease modification agreement dated January 2, 1993, it is provided *inter alia:* "5. In the event of a dispute arising out of this lease modification agreement or the original lease, the prevailing party shall be entitled to recover from the other party all costs, out-of-pocket expenses and reasonable attorney's fees incurred by the prevailing party in any such action or appeal."

The Elks Lodge's counsel were awarded attorney's fees which arose pre-petition as part of the cure of the lease default.

In this circuit the award of attorney's fees to creditors or to the prevailing party is governed by well-established principles set forth in case law, including *In re LCO Enterprises, Inc.,* 180 B.R. 567, 569–70 (9th Cir. BAP 1995) which was cited with approval by *In re Kord Enterprises, II,* 139 F.3d 684, 687 (9th Cir.1998). *LCO Enterprises* states the General Rule in federal courts on awarding attorney's fees as follows:

A. The American Rule

The seminal case dealing with attorneys' fees in federal court is *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Both the BAP and the Ninth Circuit have recently utilized the American Rule as it is set forth in *Alyeska,* thereby showing its continued acceptance in the Ninth Circuit. *Sterling Federal Systems, Inc. v. Goldin,* 16 F.3d 1177, 1183 (Fed.Cir.1994); *Modzelewski v. Resolution Trust Corp.,* 14 F.3d 1374, 1379 (9th Cir.1994); *Heckethorn v. Sunan Corp.,* 992 F.2d 240, 242 (9th Cir.1993); *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, International Brotherhood of Teamsters,* 989 F.2d 1077, 1084 (9th Cir. 1993); *Bank of Los Angeles v. Official PACA Creeditors' Committee (In re Southland + Keystone),* 132 B.R. 632, 643 (9th Cir. BAP 1991).

The Supreme Court in *Alyeska* went to considerable lengths to trace the development of the "American Rule": "the prevailing party may not recover attorneys' fees as costs or otherwise." The court then discussed exceptions to the "American Rule."

> What Congress has done, however, while fully recognizing and accepting the general rule, is to make specific and explicit provisions for the allowance of attorneys' fees under selected statutes granting or protecting various federal rights.... [I]t is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts is

making those awards are matters for Congress to determine.

*Alyeska,* 421 U.S. at 260–62, 95 S.Ct. at 1623–24.

*LCO Enterprises,* 180 B.R. at 569–70.

*LCO Enterprises* further discussed "Fee Shifting in Bankruptcy" and ordered, that following the American Rule: "Congress has created attorneys' fees provisions in some statutes. For example, § 362(h) allows for the payment of attorneys' fees for willful violations of the automatic stay. *Havelock v. Taxel (In re Pace),* 159 B.R. 890, 902 (9th Cir. BAP 1993); 11 U.S.C. § 362(h). Section 506(b) is another section which provides for the payment of an oversecured creditor's attorneys' fees if their agreement so provides. However, Lincoln cites to no similar provision or legislative history surrounding either § 547 or § 365. Based upon the record before us, we do not find support for an award of attorneys' fees under either § 547 or § 365." *LCO Enterprises,* 180 B.R. at 570.

*LCO Enterprises* further discusses "Contractual Attorneys' Fee Clause" situations and firmly holds that such fees are recoverable only if they are linked to litigation seeking to enforce a contract. *Id.* at 570. The Elks Lodge Application here is based wholly in bankruptcy law, and the question of enforceability of the lease was not at issue. Citing *Collingwood Grain, Inc. v. Coast Trading Company, Inc. (In re Coast Trading Company, Inc.),* 744 F.2d 686, 693 (9th Cir.1984), *LCO Enterprises* concludes: "Absent bad faith or harassment, attorneys' fees are not available for the litigation of federal bankruptcy issues under a contract which provides for attorneys' fees for enforcement of the contract." *LCO Enterprises,* 180 B.R. at 570.

As further explained in *In re Exchange Resources, Inc.,* 214 B.R. 366, 370 (Bankr. Minn.1997) discussing § 365(d)(3):

The recovery of attorney fees, then, is logically limited to those accrued in legal proceedings to address the breach. These provisions do not authorize a landlord to retain counsel at the tenant's expense just to monitor the tenant's business operations and options, or to assess the likelihood that the tenant will perform on the lease in the future. Nor do they authorize the landlord to do so to aid the landlord in re-letting the property to a different party after the lease term expires. If a landlord retains counsel under such circumstances, the resultant fees are chargeable to its own general cost of operations; they are in no way chargeable to a tenant that is not in default, absent very specific provisions in the lease.

In accord is *In re Cukierman,* 265 F.3d 846, 852 (9th Cir.2001). In the case *sub judice,* the lease has been assumed and all of the fees now requested were incurred after cure of the default, involve only bankruptcy issues and not a contest over the prior breach of the lease.

As held in *In re Fobian,* 951 F.2d 1149, 1153 (9th Cir.1991), a chapter 12 secured creditor who prevailed on an objection to the plan was not entitled to attorneys' fees because the litigated issues were peculiar to bankruptcy law and not a traditional action on a contract.

Indeed, the lease agreement was approved over objection of the Elks Lodge, and the default was allowed to be cured under § 365(b)(1)(B). Certainly the Elks Lodge was not the prevailing party, which would trigger the contract clause cited above, and clearly § 365 has been interpreted against allowance of fees under that section. Equally important there is no language whatsoever in the confirmation or disclosure statement sections §§ 1125 or 1129 which allow for an award of attor-

neys' fees, which is the basis in large part for the instant request for fees by the Elks Lodge.

■ Finally, the legal services were performed post-petition, and if allowable, would thus lead to a claim that the fees are payable as an administrative expense under 11 U.S.C. § 507(a)(1), which adopts 11 U.S.C. § 503(b)(1)(A), which defines administrative expenses as "the actual, necessary costs and expenses of preserving the estate", and § 503(b)(3) which allows for compensation for legal services for actions by attorneys which benefit the estate, such as recovering any property transferred or concealed by the debtor. As stated in *Einstein/Noah Bagel Corp. v. Smith (In re BCE West, L.P.)*, 319 F.3d 1166, 1172 (9th Cir.2003):

> In order to limit abuses of the administrative-expense priority, we require a claimant to show that the debt: (1) arose from a transaction with the debtor-in-possession and (2) directly and substantially benefitted the estate. [*In re Abercrombie*, 139 F.3d 755, 757 (9th Cir.1998)]. "Critically … only *post-petition* debts can be treated as administrative expenses; *pre-petition* debts may not be granted administrative—expense priority." *In re Kadjevich*, 220 F.3d at 1019 (emphasis in original).

\* \* \* \* \* \*

In reaching our decision in *Kadjevich*, we relied on our earlier holding in *In re Abercrombie*, 139 F.3d 755 (9th Cir. 1998). *Abercrombie* likewise rejected a claimant's attempt to classify his claim according to the debtor's post-petition conduct. Instead, we evaluated the claim by looking to the source of the obligation. 139 F.3d at 759. Because "the source of the estate's obligation remain[ed] the pre[-]petition fee provision," we determined that the claimant's

expense arose prepetition and was not entitled to administrative-expense priority. *Id.*

Like *BCE West*, the source of the obligation between the Debtors and the Elks Lodge was the lease agreement as modified, which arose pre-petition, and the Elks Lodge's conduct in the post-petition bankruptcy activity as described in the pending fee Application necessarily gained its source from the assumed lease by the Debtors.

For all the reasons stated above, I determine the Elks Lodge Application for attorneys' fees from the post-petition legal services of its counsel are not allowed under the American Rule, or any exception by statute or contract to that Rule. The legal services are linked solely to conduct arising in the bankruptcy context, based wholly on bankruptcy law, and did not involve the enforceability of the lease agreement.

**IT IS THEREFORE ORDERED** the "Application for Professional Fees and Costs–Final Application" filed for counsel of the Hell Gate Elks Lodge No. 383 on January 22, 2003, is **DENIED.**