HATCHETT, Circuit Judge:
 

 In this appeal, we address the tension that exists between 11 U.S.C.A. § 547 which allows a trustee in bankruptcy to recover preferential transfers and 11 U.S. C.A. § 1110 which provides for a stipulation leading to a debtor’s continued possession of an aircraft after defaults are cured. We resolve the issue, as did the district court, based on congressional intent and common sense.
 

 Pursuant to a written agreement dated September 30, 1978, Airlift International, Inc. (Airlift) purchased from GATX Leasing Corporation (GATX) one McDonnell-Douglas DC8-63CF aircraft and five Pratt and Whitney JT3D-7 turbo fan engines (collectively referred to as “aircraft”) for $11,596,973. Airlift executed a promissory note which provided that it pay the balance of $9,220,000 in 120 monthly installments of $130,951.16, including principal and interest. On June 29, 1979, Airlift executed an aircraft chattel mortgage granting GATX a security interest in the aircraft to secure the payments due under the note. This mortgage entitled GATX to repossess the aircraft in the event Airlift defaulted under the note.
 

 Airlift made the monthly payments required under the note through February 26, 1981. The payment due February 26 was made on March 3, 1981, within the ten-day cure period provided by the note. Airlift did not make the regular monthly installment payments due March 26 and April 26, 1981, but instead made partial payments to GATX of $65,000 on or about April 9 and May 8, 1981, and $65,951.16 on or about April 22, 1981. These four payments totaled $326,902.32. Airlift also failed to make any portion of the payment due on May 26, 1981.
 

 On June 4, 1981, Airlift filed a petition in the United States Bankruptcy Court for the Southern District of Florida. Upon filing the petition, GATX’s contractual right to take immediate possession of the aircraft was automatically suspended by operation of 11 U.S.C. § 362(a), which, with certain limitations, stays any creditor’s action to enforce claims against a debtor or to obtain possession of property from the bankruptcy estate.
 

 As a secured party under a purchase money aircraft chattel mortgage, however, GATX was afforded the special protection of 11 U.S.C.A. § 1110.
 
 [1]
 
 The effect of this section, which creates additional rights for those who finance aircraft purchases, is to
 
 *661
 
 curtail the power of the bankruptcy court to enjoin aircraft financers, such as GATX, from taking possession of their collateral in accordance with their contractual right. Under section 1110, GATX had the right to repossess the aircraft unless, within sixty days of the filing of the bankruptcy petition, Airlift (1) agreed to perform its obligations under the note and mortgage which became due thereafter, and (2) cured any existing defaults under its agreements with GATX. Prior to the expiration of the sixty-day period, however, the automatic stay imposed by section 362 was still effective against GATX.
 

 After the sixty-day period expired and section 1110 deprived the bankruptcy court of any power to enjoin GATX from repossessing the aircraft, Airlift and GATX entered into a stipulation, pursuant to section 1110, which permitted Airlift to continue using the aircraft subject to certain specified conditions.
 
 [2]
 
 The stipulation obligated Airlift to cure its prior defaults in “accordance with subsection (a)(2) of section 1110, Title 11, United States Code.” Airlift’s defaults included all overdue payments under the note and mortgage.
 

 In the presence of counsel for various creditors and for the Creditors’ Committee, Airlift presented the stipulation to the bankruptcy court for approval. During the hearing on August 11, 1981, the bankruptcy court approved the stipulation.
 

 On November 9, 1981, the bankruptcy court appointed William D. Seidle and James D. Brock as trustees to replace the management of Airlift in the Chapter 11 bankruptcy proceeding.
 
 [3]
 
 After their appointment, the trustees continued to possess and make use of the aircraft, but never made any payments to GATX as required by the stipulation. Specifically, the trustees failed to make the payment due on November 26, 1981. On December 7, 1981, after the expiration of the ten-day cure period of the note, and 40 days after Airlift’s last payment, GATX took possession of the aircraft. GATX subsequently filed an administrative claim for $178,-966.59 based on Airlift’s retention of the aircraft during this period. This sum represented the November 26, 1981 installment, plus the prorated portion between November 26 and December 7, 1981. The district court awarded only $8,597.48. On appeal, we reversed and directed that the district court award GATX $178,966.59.
 
 GATX Leasing Corporation v. Airlift International, Inc.,
 
 761 F.2d 1503 (11th Cir. 1985).
 

 On October 13, 1983, Seidle filed the instant action to set aside, as preferences under 11 U.S.C.A. § 547, the $326,902.32 in payments Airlift made to GATX within ninety days prior to the filing of the petition. On November 14, 1984, the district court, 45 B.R. 327, granted GATX’s motion for summary judgment. Seidle appeals.
 

 This is a case of first impression. In this opinion, we address the relationship and
 
 *662
 
 tension between 11 U.S.C.A. §§ 547 and 1110. The issue for our consideration is whether a stipulation entered pursuant to 11 U.S.C.A. § 1110 precludes a trustee in bankruptcy from recovering preferential transfers under 11 U.S.C.A. § 547.
 

 DISCUSSION
 

 In
 
 GATX Leasing Corporation v. Airlift. International, Inc.,
 
 Seidle challenged his obligation to make the requisite payments pursuant to the section 1110 stipulation terms. 761 F.2d 1503 (11th Cir.1985). Seidle rejected the stipulation as an exec-utory contract under 11 U.S.C.A. § 365.
 
 [4]
 
 We concluded, however, that Seidle’s breach occurred post-petition and was better characterized as an administrative expense claim under 11 U.S.C.A. § 503(b).
 
 [5]
 

 The policy behind treating claims arising from post-petition breaches as administrative expenses is clear. The debtor in possession or trustee by assuming or entering into a contract makes a determination that the contract is in the best interest of the estate and its creditors. This rationale is equally applicable to a section 1110 case where the debtor or trustee has sixty days to contemplate the wisdom of meeting the terms of section 1110. This sixty-day period gives the debtor or trustee the opportunity to reassess his situation in light of bankruptcy and to choose whether to enter into a section 1110 agreement as if he was entering into a new contract. Moreover, sections 365 and 1110 both require court approval of post-petition agreements to continue pre-petition obligations.
 

 In re Airlift International, Inc.,
 
 761 F.2d at 1509. Accordingly, we determined that the stipulation entitled GATX to $178,-966.59 as an administrative obligation of the estate.
 

 In this case, Seidle attempts to circumvent the stipulation by arguing that section 547 allows a trustee to recover the payments Airlift made within ninety days preceding bankruptcy. Within ninety days of Airlift’s bankruptcy petition filing date, Airlift paid GATX $326,902.32 in four installments. Seidle attempts to set aside, as preferences, these pre-petition payments which Airlift would have otherwise been required to make pursuant to the section 1110 stipulation. Seidle contends that section 1110 provides that the debtor must cure all defaults which occurred before the stipulation. Seidle insists that outstanding default payments are distinguishable from payments actually made within ninety days of the filing of the bankruptcy petition. Seidle argues that the “defaults” do not include any payments Airlift made to GATX. Although Seidle’s argument may appear technically correct, application of this theory would render the section 1110 stipulation impractical and ineffective.
 

 Title 11 U.S.C.A. § 1110 affords equipment financers greater ability to protect their, collateral during a bankruptcy proceeding. Under section 1110, a creditor may repossess its collateral sixty days following a debtor’s bankruptcy petition. In the alternative, the parties may enter into a court-approved stipulation which allows a debtor to retain possession of the equipment by curing defaults and making the required lease or purchase payments. H.R.Rep. No. 595, 95th Cong., 1st Sess. 405 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Adm.News 5963, 6361. This additional protection provides financers an incentive to extend flexible financing terms in major equipment purchases. The section 1110 protection, however, only extends to leases and conditional sales contracts.
 

 
 *663
 
 Congress intended that section 1110 encourage new financing of ships and airplanes.
 

 The [section 1110] accommodates the joint interests of the equipment financers and of the integrity of the bankruptcy laws and reorganization process.... All prior defaults must be cured, and any defaults that occur after the agreement to perform is made must be cured within thirty days after they occur. If these conditions are met, the financer may not retake possession of the equipment. Otherwise, his right to retake is unaffected.
 

 The section[s] protect the interests of the financer by entitling him to payments according to the financing agreement terms or by his equipment. They protect the estate and reorganization process by leaving the choice of which the financer will get to the trustee. Thus, equipment that the trustee needs to keep operating the business is beyond reach by the fi-nancer if the trustee is willing to continue to pay for it according to pre-bank-ruptcy terms. If the trustee does not need the equipment, he may simply surrender it to the financer.
 

 1978 U.S.Code Cong. & Adm.News 5963, 6198-99.
 

 Title 11 U.S.C.A. § 547 allows the trustee to avoid a transfer if five conditions are satisfied.
 
 [6]
 

 First, the transfer must be to or for the benefit of a creditor. Second, the transfer must be for or on account of an antecedent debt owed by the debtor before the transfer was made. Third, the transfer must have been made when the debtor was insolvent. Fourth, the transfer must have been made during the ninety days immediately preceding the commencement of the case_ Finally, the transfer must enable the creditor to whom or for whose benefit it was made to receive a greater percentage of his claim than he would receive under the distributive provisions of the Bankruptcy Code.
 

 S.Rep. 989, 95th Congress, 1st Sess. 87,
 
 reprinted in
 
 1978 U.S.Code Cong. & Adm. News 5787, 5873.
 

 A few illustrations demonstrate that providing exception for section 547 preferences defeats the congressional intent of section 1110 and produces unsound results. For example, if Airlift paid GATX in full during the ninety days pre-petition, no defaults would exist to cure under section' 1110; yet, GATX would have to return all the money it received to the trustee. On the other hand, if GATX received nothing during the ninety days pre-petition, it would have a right to be paid in full under section 1110 and would suffer no exposure to a preference action.
 

 No exception is carved out for defaults arising from payments due during the ninety days immediately preceding the filing of a petition. Allowing a trustee or debtor in possession to recover pre-petition payments as preferences creates arbitrary results contrary to the congressional intent of the statute. Section 1110 refers to
 
 “any
 
 default.” The effect of section 1110 in encouraging financing for the air carrier in
 
 *664
 
 dustry is clear; by providing the creditor with either (1) prompt and certain repossession of its collateral or (2) satisfaction of all past due amounts and a promise to make future payments, the creditor’s risk of loss is significantly reduced.
 

 The ability of a trustee or debtor in possession to recover pre-petition payments as preferences after curing its defaults pursuant to section 1110 produces the opposite effect. Under the trustee’s proposed interpretation, the debtor, anticipating his impending bankruptcy filing, could make all payments to the financer of the aircraft, creating no pre-petition defaults that would have to be cured under the stipulation. After entering into the stipulation and securing possession of the aircraft, the debt- or or trustee could simply reclaim the payments made during the ninety-day pre-petition preference period. This result nullifies the financer’s guarantee that the debt- or meet all previous contractual obligations in order to retain possession of the aircraft. Otherwise, the creditors may raise the cost of aircraft financing to compensate for that risk.
 

 Seidle asserts that Airlift’s obligations under the stipulation do not usurp his authority as trustee to set aside preferential transfers. Seidle states that his full panoply of duties as trustee began on November 9, 1981, when he assumed the position. Seidle contends that a trustee has two years from the date of his appointment to file a preference action. 11 U.S.C.A. § 546(a)(1).
 
 [7]
 
 Conversely, section 1110 requires that the trustee elect to cure all defaults within sixty days of the filing of the petition for reorganization in order to retain possession of the aircraft. Seidle insists that Airlift’s decision to enter into a stipulation on August 11, 1981, should not restrict a later appointed trustee’s authority to avoid any preferential transfers.
 

 Seidle’s argument is misplaced. The sixty-day requirement in section 1110 does not pertain to the trustee’s statutory authority to challenge any transfers as preferences. Rather, Congress imposed the sixty-day limit to expedite efforts to preserve the estate during reorganization.
 

 [T]he trustee is required to make a decision within sixty days of the order for relief. This should not impose an undue burden on the trustee, because transportation equipment in any major transportation company reorganization is one of the most important assets. A decision must be made quickly if the business is to be kept operating and be rehabilitated. The quick decision requirement applies equally to security agreements and conditional sale contracts, thus providing some additional measure of protection for equipment financer.
 

 1978 U.S.Code & Cong.Adm.News at 6199.
 

 Airlift recognized that retention of the aircraft was imperative to its successful reorganization efforts. Airlift needed the GATX aircraft in order to perform its military contracts, which generated approximately $100,000 per round trip. During the August 11, 1981, hearing, Airlift’s counsel admitted that:
 

 We cannot function without the aircraft. We have engaged in hours and weeks of study of various types of schedules both before and after we filed on June 4. This company cannot mount a viable operation without at least one DC-8-63 aircraft. This is the only one we have. There is none other available to us on any terms that we can live with. We explored that matter thoroughly long before today. We have already lost two DC-8-63s because the owners of those • aircraft made a different decision than GATX did.
 

 Further, Paul J. Finazzo, president of Airlift, testified:
 

 
 *665
 
 [T]he next flight [is] to be made within forty-eight hours. There is no way we could ever get another aircraft to replace that one, and I am seriously concerned that if we don’t fly that trip and the following one next week, we could very well not only lose September, but we stand in jeopardy or losing next year’s military contract. They have made that clear today, the military have made that clear to us.
 

 In
 
 In re Airlift International, Inc.,
 
 we recognized that “equity demands that GATX not suffer a penalty for having voluntarily entered into a post-petition section 1110 agreement with Airlift.”
 
 In re Airlift International, Inc.,
 
 761 F.2d at 1510. Like Airlift’s other aircraft creditors, GATX could have repossessed its aircraft. Instead, GATX entered into a section 1110 stipulation which allowed Airlift to retain possession of the aircraft. In return, Airlift agreed “to perform all obligations of the debtor that became due ... under such security agreement, lease, or conditional sale contract, as the case may be.” 11 U.S.C.A. § 1110(a)(1). “Airlift cannot now walk away from the terms and obligations of that post-petition agreement leaving GATX in an inferior position than it would have been if it had exercised its right to repossession in the first place.”
 
 In re Airlift International, Inc.,
 
 761 F.2d at 1510.
 

 A trustee’s election to set aside alleged preferential payments would undermine the protection that section 1110 provides for creditors. Pursuant to the section 1110 stipulation, a creditor is entitled to unpaid pre-petition payments, as defaults; a trustee may not later thwart the effect of the statute by challenging the validity of these transfers as preferences.
 

 A payment is not a voidable preference unless it improves the position the creditor would otherwise have enjoyed under the distributive provisions of the Code. 11 U.S.C.A. § 547(b)(5). The section 1110 stipulation secured GATX’s right to receive the pre-petition payments. If GATX had not received the $326,902.32 before Airlift filed its petition, GATX would have received that amount in August when the bankruptcy court approved the stipulation. Hence, Airlift’s trustee may not now recover these pre-petition payments as preferences.
 

 Seidle argues that the stipulation is ambiguous because it does not address the validity of preferences. The district court properly interpreted the stipulation terms and surrounding circumstances. On August 5, 1981, section 1110 entitled GATX to possession of its aircraft. GATX, however, entered into an agreement which enabled Airlift to use the aircraft, during its reorganization efforts. Pursuant to the stipulation, Airlift agreed to cure all defaults, as required by 11 U.S.C.A. § 1110(a)(2). During the August 11, 1981 bankruptcy hearing, Airlift represented that the payments required by the stipulation would make it current on payments under the note and urged its own right “to bring the contract up free of defaults.”
 

 In the stipulation, Airlift declared “that the Aircraft is essential to any plan or reorganization it may propound herein and thus, the uninterrupted use of such Aircraft and the Engines must be insured.” GATX attempted to minimize its risk of loss with Airlift’s guarantee that it would cure all defaults. We find that the parties understood that any payments Airlift made would remain undisturbed; otherwise, the amount of such payments would have been included in the sum needed to make the contract “free of defaults.” The cure provisions in the stipulation, Airlift’s participation in the calculation of the defaults, and Airlift’s affirmative representations before the bankruptcy court preclude the trustee’s attempt to invalidate Airlift’s pre-petition payments delivered to GATX.
 

 GATX declined to exercise its clear statutory right to repossess the aircraft on August 5, 1981. Airlift retained the aircraft; the Airlift estate would be unjustly enriched if permitted to avoid the conditions which premise Airlift’s possession of the aircraft. The district court properly interpreted the terms of the agreement in accordance with the parties’ intentions at that time.
 

 
 *666
 
 The district court properly analyzed the relationship between 11 U.S.C.A. § 547 and 11 U.S.C.A. § 1110. Accordingly, we affirm.
 

 AFFIRMED.
 

 [1]
 

 . Title 11 U.S.C.A. § 1110 provides in relevant part:
 

 (a) The right of a secured party with a purchase-money equipment security interest in, or of a lessor or conditional vendor of, whether as trustee or otherwise, aircraft, aircraft engines, propellers, appliances, or spare parts, ... may ... take possession of such equipment in compliance with the provisions of a purchase-money equipment security agreement, lease, or conditional sale contract, as the case may be, is not affected by section 362 or 363 of this title or by any power of the court to enjoin such taking of possession, unless—
 

 (1) before 60 days after the date of the order for relief under this chapter, the trustee, subject to the court's approval, agrees to perform all obligations of the debtor that become due on or after such date under such security agreement, lease, or conditional sale contract, as the case may be; and
 

 (2) any default, other than a default of a kind specified in section 365(b)(2) of this title, under such security agreement, lease, or conditional sale contract, as the case may be—
 

 (A) that occurred before such date is cured before the expiration of such 60-day period; and
 

 (B) that occurs after such date is cured before the later of—
 

 (i) 30 days after the date of such default; and
 

 (ii) the expiration of such 60-day period,
 

 (b) The trustee and the secured party, lessor, or conditional vendor, as the case may be, whose right to take possession is protected under subsection (a) of this section may agree, subject to the court’s approval, to extend the 60-day period specified in subsection (a)(1) of this section.
 

 [2]
 

 . The stipulation dated August 11, 1981, provided:
 

 Debtor has declared that the Aircraft is essential to any plan or reorganization it may propound herein and thus, the uninterrupted use of such Aircraft and the Engines must be ensured, and;
 

 Whereas, GATX would otherwise be entitled to possession of the Aircraft and Engines on August 5, 1981, pursuant to Section 1110, Title 11, United States Code.
 

 In accordance with Subsection (a)(1) of Section 1110, Title 11, United States Code, Debtor agrees, subject to the Court’s approval, to pay each installment hereafter coming due under the Note in the time and manner therein prescribed commencing on the 26th day of August, 1981, and to perform all other obligations that hereafter become due under the Aircraft Chattel Mortgage and Note....
 

 Nothing contained herein shall be construed as a waiver of any rights or remedies available or becoming available to GATX as a matter of law, provided however, that so long as Debtor makes all payments when due under the Note ... GATX will permit Debtor to remain in possession of the Aircraft and the Engines and will not exercise its rights under said Section 1110 of Title 11.
 

 [3]
 

 . The bankruptcy court originally appointed Seidle and Brock as co-trustees. Subsequently, Brock resigned.
 
 In re Airlift International, Inc.,
 
 26 B.R. 61, 65 (Bkrptcy.S.D.Fla.1982).
 

 [4]
 

 . Title 11 U.S.C.A. § 365 provides in relevant part:
 

 (a) ... the trustee, subject to the court’s approval, may assume or reject any executory contract or unexpired lease of the debtor.
 

 [5]
 

 . Title 11 U.S.C.A. § 503 provides in relevant part:
 

 (b) After a notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under'section 502(f) of this title, including—
 

 (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case.
 

 [6]
 

 . Title 11 U.S.C.A. § 547 provides in relevant part:
 

 (b) ... the trustee may avoid any transfer of property of the debtor—
 

 (1) to or for the benefit of a creditor;
 

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 

 (3) made while the debtor was insolvent;
 

 (4) made—
 

 (A) on or within 90 days before the date of the filing of the petition; or
 

 (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
 

 (i) was an insider; and
 

 (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
 

 (5)that enables such creditor to receive more than such creditor would receive if—
 

 (A) the case were a case under chapter 7 of this title;
 

 (B) the transfer had not been made; and
 

 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 

 [7]
 

 . Title 11 U.S.C.A. § 546 provides in relevant part:
 

 (a) an action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
 

 (1) two years after the appointment of a trustee....