In re WESTERN PACIFIC AIRLINES, INC., EIN 86–0758778, Debtor.

Bankruptcy No. 97–24701–SBB.

United States Bankruptcy Court, D. Colorado.

March 5, 1998.

Christian Onsager, Michael Pankow, Denver, CO, for Western Pacific Airlines, Inc.

Leo Weiss, Denver, CO, for United States Trustee.

James Markus, Block, Markus and Williams, L.L.C., Denver, CO, for Official Committee of Unsecured Creditors.

Dennis M. O'Dea, New York City, for BF Goodrich Aerospace.

Craig Christensen, Denver, CO, for Hunt Petroleum/GFI Company.

David Brennan, Steve Shimshak, Denver, CO, for Smith Management.

Douglas Jessop, Denver, CO, for City and County of Denver.

Van Aaron Hughes, Tucker Troutman, Denver, CO, for GATX Capital Corporation and B & A Leasing Corporation.

Dennis Olson, Dallas, TX, for AirCorp, Inc.

Frances Cetrulo, Denver, CO, for Sunrock Aircraft Corp. Ltd.

Peter Forbes, Denver, CO, for General Electric Capital Corpoation.

Dan Warden, Susan Freeman, Denver, CO, for Boullion Aviation.

Eugene Kottenstette, Denver, CO, for Denver Manager of Revenue.

Paul Rubner, Denver, CO, for CCA Financial, Inc., KG Aircraft Leasing Co. Ltd., and Mercury Air Group, Inc.

Glenn Merrick, Brega & Winters, Denver, CO, for Sabre Group, Inc.

William Rochell, Fulbright & Jaworski L.L.P., New York City, for ORIX Aviation Systems Limited.

Duncan Barber, Denver, CO, for Babcock & Brown.

Alan Ziegler, Colorado Springs, CO, for City of Colorado Springs.

Steve Abelman, Berryhill, Cage & North, P.C., Denver, CO, for First Security Bank of Utah.

Bonnie Bell, Denver, CO, for Mountain Air Express, Inc.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court for hearing on February 9, 1998, regarding various Lessors'[1] requests for relief under 11 U.S.C. § 1110. The parties mutually sought a declaratory judgment[2] as to their rights pursuant to Section 1110(a) and the Court considered (a) General Electric Capital Corporation's Statement of Position with respect to Shut Down Issues, (b) Aircraft Lessors'

---

1. The Lessors include Wilmington Trust Company; Sunrock Aircraft Corporation Limited; GATX Capital Corporation; GATX Third Aircraft Corp.; B & A Leasing Corp.; KG Aircraft Leasing Co., Ltd.; Babcock & Brown Aircraft Management; Aircorp, Inc.; International Lease Finance Corporation; CIT Group/Equipment Financing, Inc.; Terandon Leasing Corporation; Willis Lease Financing Corp.; and General Electric Capital Corporation.

2. Due to the immediacy of the problems confronted by the Debtor airline and the aircraft Lessors, they jointly presented the Court with this dispute, but not by way of an adversary proceeding (see, Rule 7001(1) and (9), Fed. R.Bankr.P). Time, rapidly accruing expenses, risk to idle aircraft, and the impending conflicts of Lessors physically recovering their aircraft, as they sit on the tarmac, induced all concerned to obtain an immediate decision in the nature of a declaratory judgment. The Court ruled from the bench but reserved this opportunity to express its opinion in a written order.

Position Paper on Shut Down Relief and Rights, (c) Willis Lease Financing Corp.'s and Terandon Leasing Corp.'s Joinder in Aircraft Lessors' Position Paper, (d) the Debtor's Memorandum in Response to Lessors' Position Paper on Shut Down Relief and Rights, and (e) the oral arguments of the respective parties.

## INTRODUCTION

The parties to this dispute—the Debtor-in–Possession airline and its secured, post-petition lender on one side and 13 aircraft Lessors on the other—contest the Lessors' rights to immediately retake possession of their aircraft from the airline after the Debtor's post-petition defaults under certain aircraft leases. The Lessors maintain that upon expiration of the initial 60–day period they have—at the instant the Debtor airline failed to make a post-petition lease or maintenance reserve payment—an unqualified, immediate and complete right to retake possession and control of their respective aircraft under Section 1110(a). By contrast, the Debtor airline maintains it has a continuing 30–day period to cure any post-petition monetary default during the course of the reorganization.

This is an issue of first impression. It involves the delicate balance of rights accorded to an airline debtor in reorganization and the special powers granted to aircraft lessors subjected to an airline-lessee's reorganization.

## ISSUE PRESENTED

During the course of a reorganization and after an airline debtor-in-possession agrees to perform all its obligations pursuant to 11 U.S.C. § 1110(a)(1)(A) and cures all its defaults under Section 1110(a)(1)(B), does it have a continuing 30–day period to cure any subsequent defaults? Put another way, does Section 1110 afford a Chapter 11 debtor a continuing, or rolling, 30–day period to cure any post-petition defaults, including a failure to make lease payments?

## FACTUAL BACKGROUND

Western Pacific Airlines, Inc., filed for relief under Chapter 11, Title 11 of the United States Code on October 6, 1997. At the time of filing, the Debtor leased 18 aircraft from the Lessors pursuant to various lease agreements.

On or about December 3, 1997, this Court approved a credit agreement pursuant to 11 U.S.C. § 364(c)(1) and 364(d) between the Debtor and Energy Management Corporation and Sundance Venture Partners, L.P. II (collectively, the "DIP Lenders") wherein the Court authorized the Debtor to obtain post-petition financing up to the principal amount of $30,000,000.00. As collateral for the financing, the DIP Lenders were granted, pursuant to 11 U.S.C. § 364(d)(1), *inter alia,* a first priority senior security interest in and lien upon the proceeds of any kind resulting from any disposition of any aircraft leasehold interest of the Debtor, including proceeds related to any assumption and assignment of any aircraft lease.

Thereafter, the Debtor used funds advanced from the DIP Lenders to cure defaults under virtually all of its various aircraft leases. With the exception of the five aircraft leased by the Debtor from General Electric Capital Corporation[3], the Debtor did not enter into specific written 11 U.S.C. § 1110 stipulations or agreements with the Lessors. The Debtor did, however, verbally state at the Court hearing on December 3, 1997, that it was the Debtor's intention to cure the existing lease defaults no later than the sixtieth day after entry of the order for relief, December 4, 1997, or by the thirtieth day after the default occurred, whichever occurred later, and then to continue paying the leases on a current basis.

On December 4, 1997, the 59th day after the order for relief entered, and on each appropriate lease due date thereafter, the Debtor cured its lease payment defaults, kept possession of all such leased aircraft, and used them in its continuing operations until its sudden and unexpected collapse at

---

**3.** The Debtor and GECC entered into a specific written 11 U.S.C. § 1110 Stipulation approved by this Court on January 5, 1998, which provided GECC with the right to immediate possession of its leased aircraft if the Debtor failed to comply with the terms of the Stipulation.

the end of January 1998. Significantly, the Debtor (a) performed its obligations and agreed to perform its future obligations pursuant to Section 1110(a)(1)(A), and (b) timely cured its lease defaults under Section 1110(a)(1)(B).

During Debtor's continued flight operations throughout December 1997 and January 1998, the Debtor performed under, and made timely lease payments under, the terms of its various lease agreements. Although the exact date is disputed by the parties, during the last week of January 1998, the DIP Lenders announced their decision to curtail funding to the Debtor, wherein all operating and future expenses to be paid by the Debtor would have to first be approved by the DIP Lenders on an item-by-item, day-by-day, basis. On February 4, 1998, the Debtor ceased flight operations. During the week prior to February 4, 1998, numerous aircraft lease payments had come due but were not paid by the Debtor.

The essence of this dispute [4] is when, if at all, the Debtor can cure these post-petition monetary defaults. The Debtor and the DIP Lenders, on one hand, and the Lessors, on the other, disagree; the former claim a 30-day right to cure each lease default, while the latter maintain the Debtor has either (a) no right to cure the defaults, or (b) has a right to cure the defaults, but only pursuant to the far more limited cure periods specified in each particular lease.

This Court concludes that the Debtor–in–Possession does *not* have a continuing 30-day right to cure each post-petition monetary default under the aircraft leases. Rather, the Debtor-lessee, after performing its initial "60-day 1110(a) cures," only has a cure right for subsequent defaults as specified in each applicable aircraft lease.

## DISCUSSION

In any interpretation of 11 U.S.C. § 1110 [5], the Court must be mindful of the legislative intent behind the statute. Section 1110(a) generally provides that aircraft lessors can repossess their collateral upon default under the provisions of a purchase-money security agreement, lease or conditional sale contract, despite the filing of a bankruptcy petition if both non-bankruptcy law and the underlying financing agreement permit repossession. Specifically, Section 1110(a)(1)(A) and (B) provide a means for a debtor to retain possession of an aircraft by (a) agreeing to perform in the future under the terms of a given lease and (b) curing certain defaults within 60 days of the filing of the case or within 30 days after the date of the default, whichever is later. It is, essentially, a self-executing statutory provision that, absent certain specified conduct, sweeps away restraints on aircraft lessors to repossess their aircraft after a post-petition default. The purpose of Section 1110 is clearly to protect the financiers of extremely expensive, highly-maintenance intensive, mobile equipment. *In re Air Vermont,* 761 F.2d 130, 132–33 (2nd Cir.1985); *Seidle v. GATX Leasing Corp.,* 778 F.2d 659, 664 (11th Cir. 1985).

---

4. In its Memorandum Response on the issues raised herein, the Debtor asserted that it was prepared to surrender possession of and immediately reject the leases of six aircraft: one leased from International Lease Finance Corporation and five leased from GECC. This decision, therefore, ultimately concerns only the remaining 12 aircraft leases to which the Debtor is a party.

5. 11 U.S.C. § 1110(a) provides in relevant part:
(1) The right [of the creditor] ... to take possession of such equipment in compliance with a security agreement, lease, or conditional sale contract is not affected by section 362, 363, or 1129 or by any power of the court to enjoin the taking of possession unless—
(A) before the date that is 60 days after the date of the order for relief under this chap-

ter, the trustee, subject to the court's approval, agrees to perform all obligations of the debtor that become due on or after the date of the order under such security agreement, lease, or conditional sale contract; and
(B) any default, other than a default of a kind specified in section 365(b)(2), under such security agreement, lease, or conditional sale contract—.
(i) that occurs before the date of the order is cured before the expiration of such 60-day period; and
(ii) that occurs after the date-of the order is cured before the later of—
(I) the date that is 30 days after the date of the default; or
(II) the expiration of such 60-day period.

■ The parties to this dispute sharply disagree on the proper interpretation of the 30–day cure period provided for in Section 1110(a)(1)(B)(ii).

The Debtor and the DIP Lenders argue that the language of Section 1110(a)(1)(B)(ii) is clear and unambiguous in allowing a debtor a continuing, or rolling, 30–day statutory grace period to cure any lease default that occurs after the initial 60–day period set forth in Section 1110(a). The Debtor alleges that if Congress did not intend to provide debtors with a 30–day period to cure post 60–day cure period defaults, it would have limited the 30–day language to defaults occurring after the date of the relief order but before the agreement referred to in subsection (a)(1)(A).

Additionally, the Debtor argues that Section 1110(a)(1)(A) only requires that a debtor agree to "perform" lease obligations after the 60th day in order to preserve the automatic stay, not that the debtor will, in all events, "timely perform" such obligations. Congress, the Debtor maintains, knew how to require "timely" performance, but chose not to include such language in Section 1110.

The Lessors, conversely, argue that Section 1110(a)(1)(A) provides that a debtor can retain an aircraft only if the debtor agrees to perform all of the obligations of the debtor that become due under the lease on or after the date of the order for relief. *In re Airlift International, Inc.,* 761 F.2d 1503, 1513 (11th Cir.1985) *citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. 239–40 (1977), U.S.Code Cong. & Admin.News 1978, p. 6199. The Lessors maintain that after funding was curtailed by the DIP Lenders and after it ceased flight operations, the Debtor could not commit to making the lease payments and other payments required under the terms of the leases. Therefore, the Lessors are entitled to immediate possession of the aircraft.

Additionally, the Lessors contend that the Section 1110(a)(1)(B)(ii) 30–day extension for curing defaults only applies to those payments that come due, or more accurately payment defaults occurring, during the first 60 days of the bankruptcy case. Section 1110(a)(B)(ii) does not apply, they say, to any lease payments that come due after the initial 60 days of the case. If this were not true, it is argued, the Section 1110(a)(1)(A) requirement that the Debtor commit to fully perform all lease provisions would be useless, or seriously undermined.

Alternatively and independently, the Lessors allege that there are non-monetary[6] defaults which cannot be cured by the Debtor and, therefore, they are entitled to forthwith recovery of their aircraft under Section 1110.

The Court considered the Section 1110 decisions of the Eleventh Circuit in *Seidle v. GATX Leasing Corporation,* 778 F.2d 659 (11th Cir.1985) and *GATX Leasing Corp. v. Airlift International, Inc. (In re Airlift International, Inc.),* 761 F.2d 1503 (11th Cir. 1985). While the decisions of the Eleventh Circuit are informative and instructive, they are not directly on point. In Seidle, the Court was faced with the issue of whether a Section 1110 stipulation precludes a trustee in bankruptcy from recovering preferential transfers under 11 U.S.C. § 547. While concluding that a trustee cannot recover prepetition payments as preferences if a debtor or trustee cures defaults pursuant to Section 1110 and enters into a court-approved Section 1110 stipulation, the Court first analyzed the congressional intent behind Section 1110 and the effect of a Section 1110 written stipulation between the parties.

In analyzing the policy behind treating post-petition breaches of Section 1110 stipulations as administrative expense claims, the Court explained that by assuming or entering into a contract, the debtor in possession or trustee makes

[A] determination that the contract is in the best interest of the estate and its creditors. This rationale is equally applicable to a section 1110 case where the debtor or trustee has sixty days to contemplate the wisdom of meeting the terms of section 1110. This sixty-day period gives the debtor or trustee the opportunity to reassess his situation in light of

---

6. The Lessors allege that the Debtors cessation of flight operations and material adverse changes in the Debtor's circumstances are non-monetary defaults under the various leases.

bankruptcy and to choose whether to enter into a section 1110 agreement as if he was entering into a new contract. Moreover, sections 365 and 1110 both require court approval of post-petition agreements to continue *pre-petition obligations*.

*Id.* at 662 (*quoting GATX Leasing Corp.* at 1509) (emphasis added).

* * * *

Thus, equipment that the trustee needs to keep operating the business is beyond reach by the financier if the trustee is willing to continue to pay for it according to *pre-bankruptcy terms*.

*Id.* at 663 (*quoting* 1978 U.S.Code Cong. & Adm.News 5963, 6198–99) (emphasis added).

The *Seidle* Court's emphasis on the fact that a Section 1110 agreement is a post-petition agreement or contract wherein a debtor can retain possession of equipment only by curing defaults and then continuing to make payments according to the pre-bankruptcy terms of the lease is instructive. This was also highlighted by the Eleventh Circuit in the *Airlift* case. There, the Court stressed that while a section 1110 stipulation resembles a Section 365 assumption contract, they are different. When a debtor enters into a Section 1110 stipulation, it is not liable for performance of the entire contract, but it is subject to the normal requirements of section 365, i.e., past defaults must be cured and the debtor or trustee must agree to perform future obligations. Therefore, the Court concluded, "... a section 1110 agreement amounts to a post-petition agreement under which the trustee agrees to meet the obligations coming due under the existing executory contract or unexpired lease." *Id.* at 1509.

This Court finds that Section 1110(a)(1)(A) gives a debtor a 60–day window to determine whether it wants to enter into a Section 1110 agreement. If the debtor decides to do so, then it commits, explicitly, or through its conduct implicitly, to cure all lease payments that have come due prior to and during the first 60 days of the case, and agree to timely perform all its obligations in the future under the terms of the existing lease. The statute does, however, provide a Section 1110(a)(1)(B) 30–day extension of time to cure any defaults that have arisen since the petition date, but only for payments that came due during the first 60 days of the case and only if such a 30–day grace period would extend the due date beyond the initial 60 days. For example, if a lease payment is due under the terms of the original lease on the 58th day after the petition date, such payment would not be due two days later, i.e., on the 60th day after entry of the order for relief. Instead, the debtor is given a 30–day grace period to make this payment and still comply with the requirements of Section 1110(a)(1)(A) for having an effective Section 1110 agreement. This 30–day grace period under subsection (a)(1)(B), however, only applies to lease payments that come due during the first 60 days of the case. It does not apply to any lease payment that comes due on or after the 61st day of the case. Those payments must be made according to the terms of the pre-bankruptcy lease.

In other words, Section 1110(a) does not afford a debtor an open-ended right to cure all post-petition lease defaults within 30 days after each default. This Court declines to accept the Debtor's argument that for the life of the Chapter 11 bankruptcy a debtor is continually afforded a 30–day grace period to cure a default on any installment payment that came due after the initial 60–day period. Such an interpretation would (a) ignore the language of section 1110(a)(1)(A); (b) rewrite the lease agreement, or at least override the terms of the lease for the entire duration of the bankruptcy proceeding; and (c) ignore, or defy, the clear congressional intent to provide special provisions and protections to aircraft lessors in a Chapter 11 proceeding.

██ Here, in early December 1997, when the Debtor (a) agreed to perform all its obligations that became due on or after the date of the order for relief, and (b) immediately cured all existing defaults (with the exception that those payments that came due during the initial 60–day period after filing were cured within 30 days after they came due or within 60 days after filing, whichever was later), the Debtor became obligated to timely perform according to the terms of the various aircraft leases until such time as the Debtor either assumed or rejected the leases.

While the Court is fully cognizant that a Section 1110 agreement does not have all of the attributes and burdens of a Section 365 assumption, it does, nonetheless, impose an obligation on the Debtor to comply with the terms of the pre-petition lease agreement under which it retains and uses the aircraft. After a debtor enters into a Section 1110 agreement, explicitly or implicitly, and effectuates the cures necessitated by Section 1110(a)(1)(B), it then must operate under the original terms of the pre-petition lease or financing agreement. Section 1110(a)(1)(B)(ii) does not afford a debtor, as this Debtor argues, a continuing, rolling or ongoing, 30–day statutory grace period to cure any default which occurs beyond the initial 60–day period after the order for relief enters.

■ As to the Lessors' argument that there are non-monetary defaults under the various leases which cannot be cured by the Debtor, e.g., the Debtor's cessation of flight operations and material adverse changes in the Debtor's circumstances, the Court finds that such defaults are not irreversible and immutable under the circumstances of this case. The types of non-monetary defaults cited by the Lessors fall squarely within the parameters of 11 U.S.C. § 365(b)(2). Particularly, the cessation of flight operations and material adverse changes in the Debtor's circumstances, clearly fall within the ambit of Section 365(b)(2)(A) as a default that relates to the insolvency or financial condition of the debtor. Additionally, Section 365(b)(2)(D) provides that in curing defaults related to an assumption of an executory contract or unexpired lease, a debtor is excused from curing any defaults that occur due to a penalty rate or that arise from a debtor's failure to perform nonmonetary obligations. Therefore, the Debtor is not required under Section 365(b)(2) to cure nonmonetary defaults to comply with Section 1110 or to assume an unexpired aircraft lease.

■ The Court's decision today that Section 1110 does not afford the Debtor a 30–day period to cure lease defaults that have arisen after it effectuated its 60–day cures

and entered into Section 1110 agreements with the Lessors, immediately, summarily and irrevocably strips the Debtor of any opportunity to cure such defaults and thereby salvage any value of the DIP Lender's collateral. There is no precedent, no case law on point, with respect to the issue here decided. This decision is the very first legal guidance these parties have had on the question. To issue this legal opinion *after* the defaults, completely and summarily deprives the Debtor of any recourse. Such a result is unfair and financially catastrophic for the Debtor and/or its Debtor–in–Possession lender.

Section 365(d)(10) provides, *inter alia,* that based on the equities of the case, a court may alter the timely performance requirement of a debtor's obligations under an unexpired lease prior to assumption or rejection of such lease. Considering the absence of any controlling law to guide the parties prior to this decision, the Court believes that equity [7] and Section 365(d)(10) dictate that the Court allow the Debtor a brief opportunity to cure any existing defaults in accordance with this Court's ruling. Therefore, the Court will allow the Debtor to cure any existing defaults or defaults that occur on or before February 12, 1998, (1) according to the cure periods provided in the various leases, or (2) 72 hours from the conclusion of the February 9, 1998 hearing, i.e. until 5:00 p.m. on February 12, 1998, whichever is later. If the Debtor does not completely cure the monetary default under any given lease by the Court-imposed deadlines set forth above, then the Lessors shall be entitled to immediately and unilaterally take complete control and possession of their aircraft.

### CONCLUSION

For the reasons set forth above, this Court concludes that Section 1110(a)(1)(A) gives a debtor 60 days after the filing of the petition to decide if it will enter into a Section 1110 agreement. If a debtor enters into such an agreement, either implicitly or explicitly, it must (a) commit to perform all lease obligations that have come due after the petition, (b) agree to timely perform future obligations

---

7. The Court augments the authority provided to it under Section 365(d)(10), with the authority accorded it under 11 U.S.C. § 105, to fashion suitable, equitable relief according to the necessities of the case.

according to the lease terms, and (c) immediately cure all defaults that occurred within the initial 60 days of the case, except that a 30–day grace period is applicable to those payments coming due during the first 60 days of the case. Any defaults that occur after the initial 60–day period must be cured according to the terms of the pre-bankruptcy lease, failing which the lessor is entitled to immediate possession of its aircraft.

### ORDER

IT IS ORDERED that the Debtor shall be allowed to maintain possession of any given aircraft if it cures any monetary default according to the terms of the pre-bankruptcy lease or by 5:00 p.m. on Thursday, February 12, 1998, whichever is later.

IT IS FURTHER ORDERED that a lessor shall be entitled to immediate possession and control of any aircraft for which there is not a complete monetary cure according to the Court-imposed deadlines set forth above.